Archie BUTTZ, Appellee,

v.

OWENS–CORNING FIBERGLAS COR-
PORATION and Pittsburgh Corn-
ing Corporation, Appellants.

Myrtle Juanita LOWE, Appellee,

v.

OWENS–CORNING FIBERGLAS COR-
PORATION, Owens–Illinois, Inc., and
Pittsburgh Corning Corporation, Appel-
lants.

No. 95–913.

Supreme Court of Iowa.

Dec. 18, 1996.

Virginia M. Giokaris of Polsinelli, White,
Vardeman & Shalton, P.C., Kansas City, Mis-
souri, for appellants Owens–Illinois, Inc. and
Pittsburgh Corning Corporation.

John D. Ackerman of Heidman, Redmond,
Fredregill, Patterson, Schatz & Plaza,
L.L.P., Sioux City, for appellant Owens–
Corning Fiberglas Corporation.

L. Joel Chastain of Ness, Motley, Load-
holt, Richardson & Poole, P.A., Barnwell,
South Carolina, William M. Connelly of Ness,
Motley, Loadholt, Richardson & Poole, P.A.,
Charleston, South Carolina, and James M.
Stanton of Stanton & Sorensen, Clear Lake,
for appellees.

Considered by LARSON, P.J., and
CARTER, LAVORATO, SNELL, and
TERNUS, JJ.

LARSON, Justice.

Archie Buttz and Paul Lowe were em-
ployed as construction workers prior to their
retirement in 1978. They later were found
to have asbestos-related diseases, and they
filed these suits against the asbestos manu-
facturers, Owens–Illinois, Inc., Pittsburgh
Corning Corporation, and Owens–Corning
Fiberglas Corporation.[1] The district court
consolidated the cases. The defendants filed
motions for summary judgment on the
ground that the suits, filed in 1993, were
barred by Iowa Code section 614.1(11) (1993).
The district court ruled that the suits were
not based on defects in "improvements to
real property" and therefore were not cov-
ered by the statute. The court denied the
motions for summary judgment, and the de-
fendants brought this interlocutory appeal.
We affirm.

Iowa Code section 614.1(11) provides:

In addition to limitations contained else-
where in this section, an action arising out
of the unsafe or defective condition of *an
improvement to real property* based on
tort and implied warranty and for contri-
bution and indemnity, and founded on inju-
ry to property, real or personal, or injury
to the person or wrongful death, shall not
be brought more than fifteen years after

---

1. Owens–Illinois, Inc. is a defendant only in the
Lowe case. Both Pittsburgh Corning Corpora-
tion and Owens–Corning Fiberglas Corporation
are defendants in both the Lowe and Buttz cases.

Paul Lowe died after commencing this suit,
and his wife Myrtle Lowe was substituted as
plaintiff.

the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death. However, this subsection does not bar an action against a person solely in the person's capacity as an owner, occupant, or operator of an improvement to real property.

(Emphasis added.) This statute is described as a statute of repose. *Krull v. Thermogas,* 522 N.W.2d 607, 611 (Iowa 1994); *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.,* 507 N.W.2d 405, 408 (Iowa 1993).

The disease-causing effect of asbestos is well established in law as well as in medicine. According to the evidence in this case, asbestos becomes a health hazard when it becomes friable and inhaled into the lungs. As a sheet metal worker, Buttz was exposed to asbestos when he installed duct work and boilers. Lowe was a steam fitter and pipe fitter who worked closely with asbestos insulation applications. He was exposed to asbestos during the application process. The asbestos material with which Buttz and Lowe worked was usually in the form of "block," a thick, flat sheet of insulation material or "pipe cover," an asbestos material in preshaped semicircles to be used on pipes. The application process usually involved mixing or cutting, creating asbestos dust that was allegedly inhaled into these workers' lungs.

The defendants concede, for purposes of the motion for summary judgment, that the plaintiffs were exposed to the defendants' products as described by the plaintiffs in their depositions. The plaintiffs, in turn, concede that the steam lines, ducts, boilers, and ovens referred to in their depositions were an integral part of the buildings in which they were located. For summary judgment purposes, the defendants do not dispute the plaintiffs' claim that their exposure was before or during the application process and not after the asbestos material had become attached to the structures.

The specific issue on which this appeal turns is whether the defendants' products, prior to and during their application to the structures, were "improvement[s] to real property" under section 614.1(11). The plaintiffs argue that, because their exposure occurred before the products were applied to the buildings, the asbestos products could not be considered to be improvements to the property. The defendants counter that the asbestos was ultimately applied to the buildings, and "once the construction process begins, Iowa Code section 614.1(11) is triggered," even though the plaintiffs' exposure preceded the actual application of the products.

Section 614.1(11) does not define "improvement," and we have never been called on to construe it in a case in which the toxic exposure precedes the actual attachment of the product to the real estate. However, in *Krull,* we approved this dictionary definition of "improvement":

A permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

522 N.W.2d at 611 (quoting Webster's Third New International Dictionary 1138 (P. Gove ed. 1993)). We held in *Krull* that a furnace control valve, although personal property prior to its installation, became an improvement to real estate under section 614.1(11) when it was installed in the house. We therefore applied the statute of repose. *Krull,* 522 N.W.2d at 612. When we apply the definition of *Krull* to the facts of this case, the question becomes whether the asbestos products, in their unattached state, were "permanent addition[s] to or betterment of real property." *Id.* at 611.

A federal district court applying Iowa law held that a soap dish, once it was attached to a shower wall, was an improvement under section 614.1(11). *Patel v. Fleur de Lis Motor Inns, Inc.,* 771 F.Supp. 961, 965 (S.D.Iowa 1991). Applying this "attachment" analysis, courts in other jurisdictions have concluded that unattached insulating material is not an improvement under statutes of repose. *Corbally v. W.R. Grace & Co.,* 993 F.2d 492 (5th Cir.1993), involved a bagged asbestos product called ZAP, which was mixed with water and applied to the structure. The workers were exposed to the

product before it was applied. The manufacturers in *Corbally* argued that the fact that the product arrived at the job site in bags and required further mixing did not remove it from the category of an "improvement" under the statute of repose. The court rejected that argument, stating:

> Before becoming part of any "unit," the ZAP had to change forms, in that it must be mixed with water and spray-applied by a contractor. Thus when Zonolite delivered its product, the ZAP was still several steps removed from becoming an improvement or betterment to the freehold of any real property.

*Id.* at 494.

Further, the *Corbally* court stated:

> No "construction of an improvement to real property" occurred till the subcontractor mixed and spray-applied Zonolite's product onto the building, which is the improvement to real property in this case. At most, Zonolite manufactured a product which later became part of an improvement.... We therefore hold that as a matter of law Zonolite did not construct any "improvement to real property" nor "design the construction of an improvement" within the meaning of [the Texas statute of repose].

*Id.* at 495.

*Willis v. Raymark Industries, Inc.,* 905 F.2d 793 (4th Cir.1990), involved similar facts. The worker had been exposed to asbestos products before and during their application to the structure. The defendant manufacturers relied on Virginia's statute of repose, similar to Iowa's, and argued that the asbestos product was an improvement to real estate despite the fact that the worker's exposure occurred prior to the application of the product. The court rejected this argument.

> By its very terms, the statute of repose applies only to injuries "arising out of the defective and unsafe condition of an improvement to real property." Va.Code Ann. § 8.01–250. The harmful exposure complained of by the plaintiffs, however, occurred prior to the point at which the insulation products were incorporated into the realty. The fact that the insulation was destined for such use when it was manufactured does not in and of itself activate the statute.

*Willis,* 905 F.2d at 797–98.

The key to the application of section 614.1(11) is the physical attachment of the asbestos material to the real estate, not the intent to attach it as suggested by these defendants. The asbestos products were not attached at the time these plaintiffs were exposed and could not be considered to be improvements to real estate.

We agree with the district court that, for summary judgment purposes, the products involved in this case were not improvements to real property within the meaning of section 614.1(11), and we therefore affirm.

**AFFIRMED.**