Gloria A. TALLMAN, Executor of the
Estate of Robert W. Tallman,
Deceased, Appellant,

v.

W.R. GRACE & CO.—CONN., Appellee,

and

Owens–Corning Fiberglas Corporation,
Owens–Illinois, Inc., and ACandS,
Inc., Defendants.

No. 95–1273.

Supreme Court of Iowa.

Jan. 22, 1997.

Michael J. Galligan, Timm W. Reid, and Richard H. Doyle of Michael J. Galligan Law Firm, P.C., Des Moines, and Phillip C. Vonderhaar of Hedberg, Ward, Owens & Vonderhaar, Des Moines, for appellant.

Michael D. Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee.

John D. Ackerman of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, for Owens–Corning Fiberglas Corporation. Virginia M. Giokaris of Polsinelli, White, Vardeman & Shalton, P.C., Kansas City, Missouri, and G. Mark Rice of Adams & Howe, P.C., Des Moines, for Owens–Illinois, Inc. and ACandS, Inc.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

LARSON, Justice.

This is another asbestos injury case between a construction worker and the manufacturers of asbestos building products. Among other defenses, the manufacturers raised the fifteen-year bar of Iowa Code section 614.1(11) (1993), which is applicable to injuries arising from improvements to real estate. The district court granted summary judgment to one of the defendants, W.R. Grace & Co., because, when the worker was exposed to its asbestos product, the product had already been attached to the real estate and therefore constituted an "improvement" under the statute. The court, however, de-

nied the remaining manufacturers' motions for summary judgment on the ground that there were issues of fact as to whether the worker's exposure occurred before or after the products were attached. The plaintiff requested permission to appeal from the summary judgment for W.R. Grace & Co. The remaining manufacturers requested permission to cross-appeal from the court's denial of their summary judgment motions. ·We granted permission for the appeals under Iowa Rule of Appellate Procedure 2, and we now affirm on both of them.

## I. *The Facts.*

Robert Tallman was employed as an electrician on various construction projects when he came in contact with asbestos products used in the construction process. Tallman's asbestos exposure spanned several years and involved various types of asbestos products manufactured, furnished, or applied by these defendants. In 1992 he developed symptoms of mesothelioma, a disease usually caused by asbestos, and died from it in 1995.

In 1968 and 1969, he was exposed to dust from Monokote, a spray fireproofing product supplied by W.R. Grace & Co. Monokote was applied to structural steel and other building surfaces to provide fire protection. Tallman breathed asbestos dust from the Monokote when the excess product fell from the ceiling support wires and when he removed it from inside of electrical boxes in the process of wiring. Defendant ACandS is an insulation contracting company. Tallman worked at a job site in 1966 and 1967 where other workers were installing asbestos-containing insulation labeled with the ACandS name. Defendant Owens–Illinois manufactured a product called Kaylo, which contains asbestos, from 1953 to 1958, and Tallman was exposed to this product in 1956. Another defendant, Owens–Corning, produced Kaylo block and pipe covering, both of which contained asbestos. Tallman worked at several sites where Kaylo was used.

The key in this case is the interpretation of Iowa Code section 614.1(11), our statute of repose, which provides:

In addition to limitations contained elsewhere in this section, an action arising out of the unsafe or defective condition of an *improvement to real property* based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death. However, this subsection does not bar an action against a person solely in the person's capacity as an owner, occupant, or operator of an improvement to real property.

Iowa Code § 614.1(11) (1993) (emphasis added).

■ In *Krull v. Thermogas Co.,* 522 N.W.2d 607, 611–12 (Iowa 1994), we held that, once a gas control valve was installed in a furnace, it became an "improvement" for purposes of this statute. In *Buttz v. Owens–Corning Fiberglas Corp.,* 557 N.W.2d 90, 91 (Iowa 1996), we addressed the same issue raised by the manufacturers' cross-appeal in the present case: whether asbestos products can become an improvement under section 614.1(11) *prior* to their actual attachment to the real estate. We held in *Buttz* that, despite an intent by the contractor to ultimately attach a product to the structure, that was not enough to make it an improvement. The key was the actual attachment of the product. *Id.* at 92. This is the precise issue raised by the manufacturers in their cross-appeal in this case, and because it was rejected in the *Buttz* case, we summarily affirm on the cross-appeal.

## II. *The Plaintiff's Appeal.*

The key to applying section 614.1(11) is whether the asbestos product was an "improvement." The plaintiff raises a question not directly answered by either *Krull* or *Buttz, i.e.,* whether asbestos, once attached, is an "improvement" even though the asbestos product was not intended to, and did not actually, enhance the value of the property. If not, the plaintiff claims, the asbestos could not be an improvement. Here, the W.R. Grace product, Monokote, was applied as a spray, and excess spray filled electric boxes

and adhered to the steel wires supporting the ceilings.

■ The plaintiff contends that Iowa Code section 614.1 does not apply to it because it is a manufacturer and not a party involved in the actual construction process. In any event, the plaintiff contends, this product as applied in this case did not meet the tests for an improvement set out in *Krull*.

A. *The purpose of section 614.1(11).* In arguing that this statute was not intended to apply to manufacturers, the plaintiff points to this explanation attached to the original bill, House File 2442:

> The bill provides for a fifteen-year statute of limitations for actions based on tort and implied warranty and for contribution and indemnity brought against an engineer, architect, contractor, or other person who improved real property, measured from the date of the act or omission alleged to be the cause of the harm which is the basis of the action. This provision is not limited to new dwellings.

This explanation suggests that manufacturers were not intended to be protected. In *Krull*, however, we rejected this argument based on the plain wording of the statute, which applies to "the act or the omission of a defendant" without limitation as to classes of persons. In addition, the statute provides exceptions for owners, occupants, or operators of an improvement to real property without mentioning any exceptions for manufacturers. We said in *Krull*:

> In interpreting statutes, we try to give effect to legislative intent. When the statutory language is plain and its meaning is clear, we should not reach for meaning beyond the statute's express terms or resort to rules of statutory construction. In searching for legislative intent, we are bound by what the legislature said, not by what it should or might have said. So we cannot under the guise of statutory interpretation enlarge or otherwise change terms of a statute.

*Krull,* 522 N.W.2d at 612 (citations omitted). We reaffirm the holding in *Krull* that section 614.1(11) applies to manufacturers.

B. *Application of the* Krull *test.* In *Krull* we held that, to be an improvement under the statute of repose, the product must (1) enhance the real property's value, (2) involve the expenditure of labor or money, and (3) be intended to make a property more useful or valuable. *Krull,* 522 N.W.2d at 612.

■ The plaintiff argues that, while Monokote overspray involves the expenditure of time and money, it satisfies neither of the other two tests. Excess asbestos spray could never be considered to be an enhancement to the property and could never be intended to make a property more valuable.

We believe, however, that the plaintiff's argument overemphasizes the intent and enhancement factors and gives too little weight to the physical attachment of the product, which we relied on in *Krull* and *Buttz*. Applying the tests of *Krull* and *Buttz*, it is undisputed that the Monokote, in general, was intended to enhance the value of the building and, in fact, did so. It is further undisputed that the Monokote was physically attached to the real estate.

While we understand the plaintiff's argument, that *overspray* was not intended to enhance the building's value, this is not a workable test. The plaintiff suggests that some of the spray was "intended" to enhance the value of the property, while other spray, applied at the same time, was not because the spray adhered to different surfaces. If we were to accept that argument, we would introduce an element of uncertainty that would detract from the bright line "attachment" rule of our prior cases.

The facts of the present case illustrate the problems with the subjective test suggested by W.R. Grace. We cannot say that Monokote sprayed into an electrical box or onto ceiling support wires necessarily would be considered waste material. An electrician, such as Tallman, might curse the material that filled the electrical box that he was wiring or that fell from the support wires around which he was working, and as to him the Monokote could well be considered to be waste material. On the other hand, to a worker who is insulating the building for the purpose of attaining maximum fireproofing and insulation, Monokote sprayed on all ex-

posed surfaces, including the electrical boxes and ceiling support wires, might be considered to be evidence of a job well done. The point is that intent is an unreliable touchstone for determining whether the material is an improvement.

An intent argument, moreover, may be made both ways. In fact, the defendant manufacturers contended in their cross-appeal in this case, as did the defendants in the *Buttz* case, that once a product arrives on the job site with intent to apply it to the real estate, it becomes an improvement for purposes of section 614.1(11). We rejected that argument in *Buttz* and do so on the cross-appeal in this case as well because the test is too subjective.

We believe that the bright line test applied by the district court is the most appropriate test for determining whether a product has become an improvement. Because the evidence is undisputed that the Monokote had become physically attached at the time Tallman was exposed to it, we believe that the district court correctly entered summary judgment on behalf of W.R. Grace & Co.

**AFFIRMED ON BOTH APPEALS.**