Marion L. HARDER, Executor of the Estate of Oscar O. Harder, and Marion L. Harder, Individually, Plaintiffs,

v.

ACANDS, INC., Armstrong World Industries, Inc., Fibreboard Corporation, Flexitallic Gasket Company, Inc., Foster Wheeler Corporation, Foster Wheeler Energy Corporation, General Electric Company, GAF Corporation, A.P. Green Industries, Inc., Keene Corporation, Owens Corning Fiberglas Corp., Owens Illinois, Inc., and U.S. Gypsum Company, Defendants.

No. C93–4070–MWB.

United States District Court,
N.D. Iowa,
Western Division.

July 16, 1998.

Richard J. Sapp, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, for Defendants.

Michael J. Galligan, Richard H. Doyle, Galligan, Tully, Doyle & Reid, P.C., Des Moines, IA, for Plaintiffs.

**AMENDED AND SUBSTITUTED MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ...................................1056
 A. Procedural Background ...........................................1056
 B. Factual Background ..............................................1057
II. LEGAL ANALYSIS ...................................................1057
 A. Standards For Summary Judgment ..................................1057
 B. The Statute Of Repose ...........................................1058
 1. Improvements to real property ...............................1059
 2. Are the turbines improvements to real property? .............1061
 3. Are the insulation blankets improvements to real property? ...1062
 4. Remaining Challenges ........................................1065
III. CONCLUSION .......................................................1065

BENNETT, District Judge.

Under Iowa's statute of repose, do products that have previously been attached to property constitute "improvements to real property" when, at the time of the alleged injurious exposure, the products are in an unattached state? The defendant manufacturer contends that they do, and therefore asserts that the plaintiff's claims of injury from exposure to asbestos insulation blankets, temporarily removed from steam turbines during maintenance, are barred by 614.1(11). The plaintiff disagrees and argues that because the products were unattached at the time of exposure, they cannot be deemed improvements to real property within the meaning of the statute. Although the Iowa Supreme Court has not been confronted with the exact factual scenario presented here, the court finds that the defendant's motion may be resolved by application of the principles set forth in the cases that have addressed the definition of "improvement to real property" and the requirements of IOWA CODE § 614.1(11).[1]

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

This products liability lawsuit has traveled a lengthy and complex procedural route. Rather than attempt an exhaustive recitation of these procedural matters, the court will set forth highlights relevant to the pending motion.

On August 2, 1993, plaintiffs Oscar and Marion Harder filed this diversity action against numerous manufacturers, processors, distributors, and sellers of asbestos and asbestos-containing products.[2] In their complaint, the Harders allege that on-the-job exposure to various asbestos products caused Oscar to develop mesothelioma—a terminal, asbestos-related cancer. They assert claims of negligence, strict liability, breach of warranty, and misrepresentation against each of the defendants.

On January 11, 1994, defendant General Electric Company ("GE") filed its answer, generally denying the allegations in the com-

---

**1.** The court realizes that it could certify this question to the Iowa Supreme Court. Nevertheless, the court declines to do so. At oral arguments, the parties declined the court's invitation to certify this question. In light of the parties' position on certification and the fact that trial is only three months away, the court will not certify the issue *sua sponte,* not least because the court finds adequate guidance is supplied by four recent Iowa Supreme Court decisions.

**2.** Oscar Harder died on January 26, 1994. Marion Harder, as executor of the estate of Oscar Harder, was then substituted as a party plaintiff.

plaint and asserting a variety of defenses. On April 1, 1998, GE filed this motion for summary judgment on the ground that Harder's claims against it are barred by the fifteen-year statute of repose set forth in Iowa Code § 614.1(11). Harder resisted GE's motion on April 27, 1998.

The court heard oral arguments on GE's motion for summary judgment on June 18, 1998, at the Federal Courthouse in Des Moines, Iowa. Harder was represented by counsel Michael J. Galligan and Richard Doyle of Galligan, Tully, Doyle & Reid, P.C., Des Moines, Iowa. GE was represented by counsel Richard J. Sapp of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, Iowa.[3]

### B. Factual Background

The parties agree that for purposes of GE's motion for summary judgment, the following factual background is undisputed. From 1956 until his retirement in 1989, Oscar Harder was employed as a utility worker for Iowa Public Service ("IPS").[4] During the course of his employment with IPS, Oscar performed general maintenance duties at several power plants, including the IPS Big Sioux Power Plant, Kirk Station, Port Neal Station, Maynard Station, and the Port Neal North facility.

One of Oscar's maintenance duties involved overhauling GE steam turbines at the power plants. These overhauls—or "maintenance outages"—took approximately four weeks to complete. The first day or two of the overhaul was devoted to removing thermal asbestos insulation blankets from underneath the turbine's exterior steel casing in order to facilitate inspection and servicing of the turbine's internal components. The thermal insulation blankets measured four feet by six feet, and were three to four inches thick. Each turbine contained approximately seventy-five to one hundred blankets. GE customized and supplied the blankets as components of its steam turbines. The thermal insulation blankets were custom fabricated for each turbine. The purpose of the blankets was

two-fold: to maximize energy efficiency and to prevent utility workers from sustaining burns should they come into contact with the turbine. Once the blankets were removed to conduct maintenance on the turbines, they were stored on the turbine room floor for the remainder of the overhaul. When the overhaul was complete, the blankets were reinstalled. Oscar breathed asbestos dust after the blankets were removed and again when he cleaned up the area where the blankets had been stored during the maintenance period.

Oscar was diagnosed with malignant mesothelioma on April 26, 1993. He died less than a year later, on January 26, 1994. Harder's complaint against GE was filed more than fifteen years after the installation of the turbines containing the thermal insulation blankets.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. See, e.g., Swanson v. Van Otterloo, 993 F.Supp. 1224, 1230–1232 (N.D.Iowa 1998); Dirks v. J.C. Robinson Seed Co., 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); Laird v. Stilwill, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); Rural Water Sys. # 1 v. City of Sioux Center, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); Tralon Corp. v. Cedarapids, Inc., 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); Security State Bank v. Firstar Bank Milwaukee, N.A., 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); Lockhart v. Cedar Rapids Community Sch. Dist., 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ...

---

**3.** Counsel for both parties are to be commended for the quality of their presentations in this matter. The court found the briefs to be exceptionally thorough and well-written, and was equally impressed by the insightful comments offered by counsel at oral argument.

**4.** IPS is now known as Midwest Resources.

may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995) (citing *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir.1990)); *Mumford v. Godfried,* 52 F.3d 756, 759 (8th Cir.1995) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."). Thus, because the issues before the court are essentially legal, summary disposition may be particu-

larly appropriate in this case. *See Mansker,* 54 F.3d at 1326.

### B. The Statute Of Repose

As indicated previously, GE moves the court for summary judgment on the ground that Harder's action against it is barred by IOWA CODE § 614.1(11).[5] Section 614.1(11), one of Iowa's statutes of repose, provides as follows:

**Improvements to real property.** In addition to limitations contained elsewhere in this section, an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of injury or death. However, this subsection does not bar an action against a person solely in the person's capacity as an owner, occupant, or operator of an improvement to real property.

IOWA CODE § 614.1(11). The Iowa Supreme Court has "characterized this as a statute of repose, which closes the door after fifteen years on certain claims arising from improvements to real property." *Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994) (citing *McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993)); *accord Buttz v. Owens–Corning Fiberglas Corp.*, 557 N.W.2d.90, 90 (Iowa 1996) (citing *Krull* and *McKiness*).

Statutes of repose are distinct from statutes of limitation. Statutes of limitation are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713

---

5. This case, before the court on diversity jurisdiction, is controlled by Iowa law. *See Frideres v. Schiltz,* 113 F.3d 897, 898 (8th Cir.1997); *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980

F.Supp. 300, 304 (N.D.Iowa 1997); *Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 678 (N.D.Iowa 1995).

(1974) (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). To serve this end, statutes of limitation bar, "after a certain period of time, the right to prosecute an accrued cause of action." *McKiness Excavating & Grading, Inc.*, 507 N.W.2d at 408. In contrast, statutes of repose extinguish a cause of action after a certain time has passed, "'regardless of whether or not there has as yet been an injury.'" *Id.* (quoting *Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D.1986)). "Under a statute of repose, therefore, the mere passage of time can prevent a legal right from ever arising." *Id.*

█ Under the statute of repose in question here, "[t]he fifteen-year period begins to run from the date of the act or omission causing the injury or death," that is, the date of the improvement to real property, *Krull,* 522 N.W.2d at 611, not from the date the party's cause of action accrued, which is the date on which "the wrongful act produces loss or damage to the claimant," as would be the case with a statute of limitation. *McKiness Excavating & Grading, Inc.*, 507 N.W.2d at 408. Thus, in *Krull,* the statute of repose began to run on the date the improvement to real property, a furnace, was purchased in 1969, and expired fifteen years later in 1984. *Id.*

In this case, in GE's view, the steam turbines and the thermal insulation blankets that allegedly caused Oscar's injury constitute improvements to real property under Iowa Code § 614.1(11). Accordingly, because the turbines and their insulation blankets were installed more than fifteen years prior to commencement of this action, GE seeks summary judgment on the ground that Harder's claims against it are barred by the statute of repose. Harder raises three arguments in resistance to GE's motion for summary judgment. First, although Harder does not dispute that more than fifteen years have passed since the installation of the turbines and the blankets, she contends that Iowa Code § 614.1(11) is inapplicable to her claims, because neither the GE turbines nor the thermal insulation blankets constitute "improvements to real property" within the meaning of this statute of repose. Second, Harder asserts that Iowa Code § 614.1(11) is

inapplicable to latent disease cases. Finally, Harder argues that Iowa Code § 614.1(11) should not be invoked to "extinguish an inchoate cause of action."

### 1. Improvements to real property

█ Turning first to Harder's assertion that the steam turbines and thermal insulation blankets do not constitute improvements to real property, the court observes that Iowa Code § 614.1(11) does not define the term "improvement" or otherwise illuminate which products fall within this statute's time constraints. *See* Iowa Code § 614.1(11); *see also Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994) (observing same). However, four recent opinions of the Iowa Supreme Court provide guidance on the meaning of "improvement to real property" within the meaning of this statute of repose. As the court reads these four decisions, the key requirement for application of Iowa Code § 614.1(11) is whether the product is "physically attached" to real property; if it is, then the question becomes whether the attached product is either a "permanent addition to or betterment of real property."

First, in *Krull v. Thermogas Co.*, 522 N.W.2d 607 (Iowa 1994), the Iowa Supreme Court was asked to determine whether a gas control valve—installed in a furnace—became an "improvement" for purposes of § 614.1(11). *Krull,* 522 N.W.2d at 611–13. Relying on the dictionary definition of "improvement," the court explained that a product becomes an improvement under Iowa's statute of repose when it is a permanent addition to or a betterment of real property that "(1) enhance[s] the [real property's] value, (2) involve[s] the expenditure of labor or money, and (3)[is] designed to make the [real property] more useful or valuable." *Id.* 611–12 (citing Webster's Third New International Dictionary 1138 (P. Grove ed.1993)). The *Krull* court determined that as part of the furnace, the control valve was a "betterment" to the Krull home, because "[w]ithout the valve, the furnace could not work properly ... [and][w]ithout a properly working furnace, the home could not be comfortably used during cold weather." *Id.* at 612. The court concluded further that "this better-

ment" was an "improvement to real property" because it "(1) enhanced the home's value, (2) involved the expenditure of labor or money, and (3) was designed to make the home more useful or valuable." *Id.*

Two years later, in *Buttz v. Owens–Corning Fiberglas Corp.*, 557 N.W.2d 90 (Iowa 1996), the Iowa Supreme Court was again put to the task of defining "improvement" for purposes of § 614.1(11). *Buttz*, 557 N.W.2d at 91–92. In *Buttz*, the plaintiffs suffered asbestos exposure prior to and during the application of asbestos insulation to the property. *Id.* at 91. The specific issue presented was whether asbestos insulation products, "prior to and during their application to [duct work and boilers], were 'improvement[s] to real property' under section 614.1(11)." *Id.* The plaintiffs, pipe fitters who worked closely with asbestos insulation applications, argued that, because their exposure occurred before the products were applied to the buildings, the asbestos products could not be considered to be improvements to real property. *Id.* Applying the definition articulated in *Krull*, the *Buttz* court found that the question became "whether asbestos products, in their unattached state, were 'permanent addition[s] to or betterment of real property.'" *Id.* The Iowa Supreme Court recognized that other courts had applied an "'attachment' analysis" to hold that "unattached insulating material is not an improvement under statutes of repose." *Id.* at 91–92 (citing *Corbally v. W.R. Grace & Co.*, 993 F.2d 492 (5th Cir.1993), and *Willis v. Raymark Indus., Inc.*, 905 F.2d 793 (4th Cir.1990)). Relying on these decisions, the Iowa Supreme Court concluded that the asbestos insulation products were not improvements, reasoning as follows:

> The key to application of section 614.1(11) is the physical attachment of the asbestos material to the real estate, not the intent to attach it as suggested by these defendants. The asbestos products were not attached at the time these plaintiffs were exposed and could not be considered to be improvements to real estate.

*Buttz*, 557 N.W.2d at 92. Therefore, the court held that, "for summary judgment purposes, the products involved in this case were not improvements to real property within the meaning of section 614.1(11)." *Id.*

In *Tallman v. W.R. Grace & Co.–Conn.*, 558 N.W.2d 208 (Iowa 1997), the court again considered the circumstances in which an asbestos product constitutes an "improvement to real property" sufficient to trigger Iowa's statute of repose. *Tallman*, 558 N.W.2d at 209–10. The plaintiff was exposed to dust from an asbestos spray fireproofing product called Monokote when excess product fell from the ceiling support wires and when he removed it from inside of electrical boxes in the process of wiring. *Id.* at 209. The court summarily rejected the defendants' cross-appeal, which asserted that asbestos products can become an improvement under § 614.1(11) prior to their actual attachment to the real estate, because this issue had already been settled in *Buttz*:

> We held in *Buttz* that, despite an intent by the contractor to ultimately attach a product to the structure, that was not enough to make it an improvement. The key was the actual attachment of the product. [*Buttz*, 557 N.W.2d] at 92. This is the precise issue raised by the manufacturers in their cross-appeal in this case, and because it was rejected in the *Buttz* case, we summarily affirm on the cross-appeal.

*Tallman*, 558 N.W.2d at 209.

However, the court observed that the plaintiff's appeal in *Tallman* raised a question not directly answered in either *Krull* or *Buttz*: "whether asbestos, once attached, is an 'improvement' even though the asbestos product was not intended to, and did not actually, enhance the value of the property." *Id.* at 209. Although Tallman conceded that the fireproofing overspray met the second portion of the *Krull* test, insofar as it involved the expenditure of time and money, he argued that it could not possibly be considered an enhancement to the property nor could it reasonably be intended to make the property more valuable. *Id.* at 210. Indeed, he argued that excess asbestos spray could *never* be considered an enhancement to the property and could *never* be intended to make a property more valuable. *Id.* The court rejected Tallman's argument:

> We believe ... that the plaintiff's argument overemphasizes the intent and enhancement factors and gives too little

weight to the physical attachment of the product, which we relied on in *Krull* and *Buttz*. Applying the tests of *Krull* and *Buttz*, it is undisputed that the Monokote, in general, was intended to enhance the value of the building and, in fact, did so. It is further undisputed that the Monokote was physically attached to the real estate.

While we understand the plaintiff's argument, that overspray was not intended to enhance the building's value, this is not a workable test. The plaintiff suggests that some of the spray was "intended" to enhance the value of the property, while other spray, applied at the same time, was not because the spray adhered to different surfaces. If we were to accept that argument, we would introduce an element of uncertainty that would detract from the bright line "attachment" rule of our prior cases. *Tallman*, 558 N.W.2d at 210. The court drove home the point by stating that "intent is an unreliable touchstone for determining whether the material is an improvement," and instead relied on the "bright line test" of attachment, holding that– because it was undisputed that the Monokote had become physically attached at the time Tallman was exposed to it, the district court had properly entered summary judgment on behalf of defendant W.R. Grace & Co. *Id.* at 211.

Finally, in *Jarnagin v. Fisher Controls Int'l, Inc.*, 573 N.W.2d 34 (Iowa 1997), the Iowa Supreme Court was asked to determine whether LP gas regulators constituted "improvements to real property" under § 614.1(11). Jarnagin argued that "permanence" is "an absolute requirement of an improvement" under § 614.1(11), and that the owner of real property must intend for the alleged improvement to be permanent in order to satisfy this requirement. *Jarnagin*, 573 N.W.2d at 36. The Iowa Supreme Court disagreed, and reiterated the definition of "improvement" adopted in *Krull:* in order to constitute an "improvement," a "product must be *either* a 'permanent addition to *or* [a] betterment of real property that enhances its capital value....'" *Id.* (emphasis added) (quoting *Krull*, 522 N.W.2d at 611). Permanence is therefore one of two alternative

requirements; the other alternative is that the product be a betterment of real property that enhances its capital value. *Id.* The Iowa Supreme Court also rejected Jarnagin's assertion regarding the necessity of an intent component observing that the "owner [need not] have the intent to make an improvement permanent for it to be considered permanent." *Id.*

Significantly, the "physical attachment" of the LP regulators was not at issue in *Jarnagin.*[6] Although the court did not specifically reiterate the physical attachment requirement emphasized in *Tallman,* the factual recitation clearly indicates that the LP regulators in *Jarnagin* were attached to the property. *See Id.* at 35–36. The fighting issues focused upon whether the regulators were intended to be permanent additions or whether they served as a betterment to the property. *See Id.* at 36–37.

### 2. Are the turbines improvements to real property?

◼ Harder's assertion that the GE turbines do not constitute improvements to real property under § 614.1(11) is unavailing under *Krull* and its progeny. Uncontroverted evidence in the record reflects that the GE steam turbines are large component parts of the power plant—weighing as much as 100 tons—that have been permanently installed with concrete foundations. Moreover, the record reflects that the turbines have been integrated into the power plant structure, and are connected to other integral components by miles of complex piping and wiring. As such, the steam turbines constitute "essential, integral component[s] of an electric generating plant." Defendant's Exhibit 2 ¶ 12. The record is equally unequivocal that the turbines enhanced the value of the power plants, involved the expenditure of labor and money, and were designed to make the power plants more useful or valuable. Thus, the steam turbines are plainly physically attached to the real property and are both "permanent addition[s]" to the power plant

---

**6.** Although Jarnagin did attempt to distinguish the LP regulators from other improvements on the ground that they were affixed outside the

home, he did not take issue with the fact that the regulators were attached to the property. *See Id.* at 36.

*and* "betterment[s] of real property that enhance[ ] its capital value." *See Jarnagin,* 573 N.W.2d at 36 (requiring only permanent addition to or betterment of real property, not both); *Tallman,* 558 N.W.2d at 210–11 (the "bright line test" is physical attachment, which cannot be disregarded in favor of enhancement of value and intent to make the property more useful or valuable); *Buttz,* 557 N.W.2d at 92 (physical attachment is the key to application of § 614.1(11)); *Krull,* 522 N.W.2d at 611 (developing the two alternative definitions of "improvement" from the dictionary meaning of the term).

Harder argues that manufacturers of heavy equipment—such as the GE steam turbines—should be excluded from Iowa's statute of repose, and directs the court's attention to *Ritter v. Abbey–Etna Machine Co.,* 483 N.W.2d 91 (Minn.Ct.App.1992). Relying upon the same definition of "improvement to real property" later adopted by the Iowa Supreme Court, the Minnesota Court of Appeals concluded that Minnesota's statute of repose did not apply to manufacturers of non-integral "production equipment." *Ritter,* 483 N.W.2d at 94 (holding that claims arising from injury caused by steel tube mills were not barred under Minnesota's statute of repose). In Harder's view, the same limitation should be employed in this case. Harder's argument overlooks the state of the summary judgment record. Here, it is uncontroverted that the steam turbines are integral parts of the power plants. *See* Defendant's Exhibit 2. Under these circumstances, even if the court were to apply the holding in *Ritter,* it would be unavailing to Harder's assertion that GE should be precluded from invoking the statute of repose.

The *Ritter* decision does not dictate a contrary result on two further grounds. First, although the Minnesota Court of Appeals in *Ritter* concluded that the comparable Minnesota statute, MINN.STAT. § 541.051, was *not* intended to protect manufacturers of production machinery, *Ritter,* 483 N.W.2d at 93, the Iowa Supreme Court has specifically concluded that IOWA CODE § 614.1(11) *does* protect manufacturers of an improvement. *See Krull,* 522 N.W.2d at 611–12. Second, although the Minnesota statute has been construed not to protect production machinery, only machinery that is an "integral part" of

the building, *Ritter,* 483 N.W.2d at 93, the Minnesota Court of Appeals has recognized that an industrial plant's electrical transformer should be treated as an improvement within the meaning of the Minnesota statute of repose. *See Kemp v. Allis–Chalmers Corp.,* 390 N.W.2d 848, 850–51 (Minn.Ct.App. 1986); *see also Ritter,* 483 N.W.2d at 93 (distinguishing production machinery from integral parts of a building, such as an overhead crane, sewer system, light fixtures, or an electrical system, citing, *inter alia, Kemp*). If light fixtures and an electrical system are "integral," the steam turbines at issue here would certainly be "integral" within the meaning of the statute even as interpreted by the Minnesota Court of Appeals.

The court holds that the GE turbines constitute an improvement to real property under IOWA CODE § 614.1(11). This determination does not, however, end the analysis. The injury complained of in this case stemmed not from exposure to the steam turbines proper, but from exposure to the removable thermal insulation blankets, which were the source of the asbestos. Therefore, the court must consider whether the insulation blankets, in their own right, constitute improvements to real property sufficient to trigger IOWA CODE § 614.1(11).

### 3. Are the insulation blankets improvements to real property?

■ Harder's argument that the thermal insulation blankets do not constitute improvements under § 614.1(11) is more troubling. Here, the court is confronted with a factual scenario that has not been precisely addressed by the Iowa Supreme Court. The issue is this: Under IOWA CODE § 614.1(11), do thermal insulation blankets that have previously been attached to real property constitute "improvements to real property" when, at the time of the injurious exposure, they are in an unattached state? To resolve the question, further evaluation of *Krull* and its progeny is necessary.

As an initial matter, the court observes that *Krull, Tallman,* and *Jarnagin* are "physical attachment cases." In other words, each of these cases concerned a factual scenario in which there was no dispute

that the offending product was physically attached to real property. Of the three, *Tallman* is the only case addressing an asbestos product.

GE reads *Tallman* for the proposition that the product at issue need not be physically attached at the time of exposure so long as the product was attached before exposure occurred. Presumably, this reading stems from the description in *Tallman* of the "overspray" as "[falling] from the ceiling support wires" and "[being] removed from inside electrical boxes" at the time of exposure. *Tallman*, 558 N.W.2d at 209. The problem with this reading of *Tallman* is that the parties there were not disputing the fireproofing spray's attachment to the property at the time of the injurious exposure and the Iowa Supreme Court did not pass, even by implication, on the question of whether the injurious product was still subject to the statute of repose if it subsequently became detached from the property. Instead, the fighting issues were whether the Monokote could be an improvement *before* actual physical attachment, if it was intended to be attached, and whether the excess spray, once attached to the property, could be an improvement where it was not intended to and did not in fact *enhance the value* of the property. *Id.* at 209-10. The Iowa Supreme Court summarily rejected the manufacturer's argument that intent to attach would suffice. *Id.* at 209. The court also rejected the plaintiff's argument that intent to enhance the value of the property and actual enhancement of value were controlling. *Id.* at 211. Instead, the Iowa Supreme Court reiterated the "bright line" test of attachment, holding that because it was undisputed that the Monokote had become physically attached at the time Tallman was exposed to it, the defendant was entitled to summary judgment under the statute of repose. *Id.* at 211. Thus, the "physical attachment" rule reaffirmed in *Tallman* was *not* "once attached, always attached," but a rule that an asbestos containing product, once actually physically attached, is subject to the statute of repose, even if it does not and is not intended to enhance the value of the property. *See Id.* at 210 (refusing to detract from the "bright line" attachment rule by considering intention to enhance the value of the property once the product was attached).

Similarly, GE reads *Jarnagin* to stand for the proposition that permanent attachment is not required; hence, temporary detachment does not void application of the statute of repose. In *Jarnagin*, the Iowa Supreme Court did hold that a "permanent addition" was one of two alternative requirements of an "improvement," either of which would suffice; the other alternative was a "betterment of real property." *Jarnagin*, 573 N.W.2d at 36. However, GE seems to confuse the "permanent addition" alternative with the "physical attachment" requirement. Although, as pointed out above, the court in *Jarnagin* did not specifically reiterate the physical attachment requirement emphasized in *Tallman*, the record in *Jarnagin* shows that the LP regulators in question were attached to the property. *Id.* at 35-36. Thus, the fighting issue was whether the regulators, plainly "attached" to the property, were "permanent additions," which the plaintiff asserted was an absolute requirement, or were instead "betterment[s] of real property" that still met the statutory meaning of an "improvement." *Id.* at 36-37.

This court's reading of *Jarnagin is* in keeping with the whole line of cases from *Krull* through *Buttz* and *Tallman:* The definition of "improvement" under IOWA CODE § 614.1(11) requires "physical attachment" as the "key" requirement, *Tallman*, 558 N.W.2d at 209; *Buttz*, 557 N.W.2d at 92; if the product is "physically attached" to real property, the question then becomes whether the attached product is *"either* a 'permanent addition to or [a] betterment of real property that enhances its capital value....'"* *Jarnagin*, 573 N.W.2d at 36 (emphasis added) (quoting *Krull*, 522 N.W.2d at 611). Indeed, *Tallman* posed the question in precisely this way, "whether the asbestos, *once attached,* is an 'improvement.'" *Tallman*, 558 N.W.2d at 209. If the product is *not* physically attached, permanence or betterment are of *no* import.

In this case, the undisputed facts reflect that the thermal insulation blankets were installed in the steam turbines prior to Oscar's alleged harmful exposure to them. It is

equally undisputed that at the time of Oscar's exposure, the blankets were detached from the turbines. This brings the analysis to the one "unattached case" in *Krull's* progeny—*Buttz*. The facts in *Buttz* are admittedly different from the facts presented here insofar as the asbestos product in *Buttz* had not yet been attached—at any time—to the property, but here, the asbestos insulation blankets had previously been attached, but were detached, albeit temporarily, at the time of Oscar's exposure. GE, seizing upon this distinction, invites the court to read *Krull, Buttz,* and *Tallman* as standing for the proposition that "once attached, always attached" for purposes of defining an improvement under § 614.1(11). Based on its review of these cases—particularly *Buttz*—the court must decline GE's invitation.

In *Buttz*, the Iowa Supreme Court instructed that "[t]he key to the application of section 614.1(11) is the physical attachment of the asbestos material to real estate." *Buttz*, 557 N.Y.S.2d 851, 557 N.E.2d at 92. The Iowa Supreme Court stated the rule drawn from other jurisdictions to be that "unattached insulating material is not an improvement under statutes of repose." *Id.* at 91–92 (citing *Corbally*, 993 F.2d at 492, and *Willis*, 905 F.2d at 793). The Iowa Supreme Court cited with approval the statement in *Willis* that " '[t]he harmful exposure complained of by the plaintiffs, however, occurred prior to the point at which the insulation products were *incorporated into the realty.* The fact that the insulation was *destined* for such use when it was manufactured does not in and of itself activate the statute.' " *Id.* at 92 (quoting *Willis*, 905 F.2d at 798, with emphasis added by this court). Although the Iowa Supreme Court in *Buttz*—like the Fourth Circuit Court of Appeals in *Willis*—was discussing a factual scenario in which the asbestos had *not yet* been incorporated into the real estate, the Iowa Supreme Court in *Buttz* did not state the "attachment" rule in terms of the product, "not yet" being attached to the property. Instead, the holding in *Buttz* was that, because "[t]he asbestos products were not attached *at the time* these plaintiffs were exposed," the products "could not be considered to be improvements to real estate." *Id.* (emphasis added). Applying the holding

of *Buttz here*, because the asbestos insulation blankets were not attached *at the time* this plaintiff was exposed, the insulation blankets could not be considered improvements to real estate. *Cf. Id.*

Here, GE points out that the thermal insulation blankets were designed to be removed briefly for maintenance purposes, and then promptly reinstalled. GE also advises the court that the turbines were not meant to function without the blankets. However, GE's assertion that the thermal insulation blankets were only "temporarily" removed runs afoul of the "bright line" attachment test by reintroducing "intent" into the analysis. In *Buttz*, the court specifically rejected the suggestion that "intent to attach" was sufficient to bring the product within the purview of the statute of repose—physical attachment at the time of exposure was necessary. *Buttz*, 557 N.W.2d at 92. Thus, the intent to reattach the blankets, or only to operate the turbines with the blankets installed, is an insufficient substitute for attachment at the time of exposure. *See Id.* (observing that the key to application of § 614.1(11) was physical attachment to real estate, not the intent to attach it).

*Tallman*, upon which GE relies, requires no different result, because in that decision, the Iowa Supreme Court reiterated the conclusion in *Buttz* that, "despite an intent by the contractor to ultimately attach a product to the structure, that was not enough to make it an improvement. The key was the actual attachment of the product." *Tallman*, 558 N.W.2d at 209 (citing *Buttz*, 557 N.W.2d at 92). Similarly, an intention ultimately to *re*-attach the thermal insulation blankets here is not enough to make the blankets an improvement, because actual attachment of the product is required. This court also declines to "introduce an element of uncertainty that would detract from the bright line 'attachment' rule of [the Iowa Supreme Court's] prior cases," *Tallman*, 558 N.W.2d at 210, based on an intention to reattach an asbestos-containing product that was not " 'incorporated into the real estate at the time of the plaintiffs exposure,' " even if " 'the insulation was destined for such use when it was manufactured' " and when it was temporarily re-

moved for maintenance work. *Buttz,* 557 N.W.2d at 92 (quoting *Willis,* 905 F.2d at 798). To put it another way, "intent is an unreliable touchstone for determining whether the material is an improvement"; the Iowa Supreme Court instead relies on the "bright line test" of attachment. *Tallman,* 558 N.W.2d at 211.

Applying the "bright-line" test of attachment formulated by the Iowa Supreme Court in *Buttz,* 557 N.W.2d at 92, and specifically reaffirmed by the Iowa Supreme Court in *Tallman,* 558 N.W.2d at 211, the court finds that the thermal insulation blankets cannot be considered improvements to real property under Iowa Code § 614.1(11). This is so because there is undisputed evidence in the record that Oscar Harder allegedly sustained his injuries while the blankets were completely detached from the steam turbines. Because the blankets were not attached at the time of Oscar's exposure, the first requisite of an "improvement" within the meaning of Iowa Code § 614.1(11) was not fulfilled, and the court therefore need not consider either of the remaining alternative requirements, "permanent addition" or "betterment of real property."

### 4. Remaining Challenges

In light of the court's conclusion that the statute of repose does not bar Harder's claims against GE, the court need not address Harder's fallback assertions that Iowa Code § 614.1(11) does not apply to latent disease cases, or that § 614.1(11) should not be invoked to extinguish an inchoate cause of action.

### III. CONCLUSION

The court concludes that, because the thermal insulation blankets were not attached to the GE steam turbines at the time Oscar Harder suffered his alleged injurious exposure to them, they cannot be characterized as "improvements to real property" under the statute of repose as that term has been defined by the Iowa Supreme Court. As a result, Harder's claims against GE are not barred by Iowa Code § 614.1(11). GE's motion for summary judgment is **denied.**

IT IS SO ORDERED.