James KRULL and Deanna Krull, Plaintiffs,

v.

THERMOGAS COMPANY OF NORTHWOOD, IOWA, DIVISION OF MAPCO GAS PRODUCTS, INC., Defendant.

THERMOGAS COMPANY OF NORTHWOOD, IOWA, DIVISION OF MAPCO GAS PRODUCTS, INC., Third–Party Appellant,

v.

HONEYWELL, INC., Third–Party Appellee.

No. 93–42.

Supreme Court of Iowa.

Oct. 19, 1994.

Rehearing Denied Nov. 21, 1994.

Robert Kohorst of Kohorst Law Firm, Harlan, for appellant.

Jeannine L. Lee and Sarah L. Brew of Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, MN, and Frank A. Comito of Comito, Capps & Critelli, Des Moines, for appellee Honeywell, Inc.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

An L.P. gas explosion and resulting fire destroyed James and Deanna Krull's home and possessions. Allegedly a gas control valve in their furnace was a cause of the explosion and fire. Honeywell, Inc. (Honeywell) manufactured the valve. The Krulls sued Thermogas Company of Northwood, Iowa, a division of Mapco Gas Products, Inc. (Mapco). The suit alleges Mapco was negligent because it failed to properly identify the valve in a recall program initiated by Honeywell.

Mapco brought a third-party action against Honeywell. This action asserts claims for, among other things, contribution and indem-

nity. The district court sustained Honeywell's motion for summary judgment over Mapco's resistance. *See* Iowa R.Civ.P. 237.

In its appeal from that ruling, Mapco raises several issues, all of which the district court decided against Mapco. Those issues concern Iowa code section 614.1(11) (1989), Iowa's statute of repose regarding defective improvements to real property. The issues are (1) whether a manufacturer can create an improvement to real property, (2) whether the time limitations of section 614.1(11) cover manufacturers of such improvements, (3) whether a claim based on negligent recall is barred by section 614.1(11), and (4) whether section 614.1(11) violates the equal protection provisions of the federal and Iowa Constitutions. We affirm.

In 1987 the Krulls and their two children moved into a farmhouse outside of Northwood. The house was heated by an L.P. gas furnace equipped with a Honeywell V8139 control valve. The furnace had been purchased in 1969. After the Krulls moved in, Mapco began supplying them with L.P. gas for cooking and heating.

Honeywell voluntarily recalled the V8139 control valve in 1980 through a media campaign and mailings to L.P. gas retailers. Honeywell asked retailers to provide it with customer lists so it could send recall notices directly to consumers. The retailers could, if they preferred, send the notices themselves. In addition, Honeywell (1) requested that retailers require their service personnel to check for recalled valves during any service call, (2) provided a toll-free number for consumers and service personnel to call and verify whether a particular valve was under recall, and (3) provided and installed new controls without charge.

In the fall of 1989, a Mapco serviceperson stopped by the Krull home specifically to examine the valve to find out whether it was under recall. He was familiar with the V8139 valve and had identified and replaced several of them. However, the serviceperson failed to properly identify the valve in the Krull's furnace. In his deposition, the serviceperson testified that he must have misidentified the valve because he had difficulty reading the control number. He incorrectly recorded the valve as V8152 or V8159. Honeywell has never manufactured control valves with either of these numbers. No one at Mapco could positively state which employee called Honeywell to determine whether either of these numbers were on the recall list.

The day before the explosion in November 1990, the serviceperson was again at the Krull's home to install a gas line to a chicken coop. He turned off the gas before installing the line, but he did not go into the house and turn off the furnace. When he was done with the line, the serviceperson told James that he would relight the pilot. James told him he would light the pilot himself.

James did not relight the pilot. At 4:15 a.m. the next morning, the Krull family was awakened by an explosion. Though they escaped uninjured, the house and its contents were destroyed by fire.

■ Our review of a summary judgment ruling is at law. Iowa R.App. 4. All the issues center on our interpretation of section 614.1(11). This is a legal question, properly resolvable by summary judgment. *Ottumwa Hous. Auth. v. State Farm Fire & Casualty Co.*, 495 N.W.2d 723, 726 (Iowa 1993).

## I. Background.

At common law, the liability of architects, engineers, and other members of the building industry was limited. Such persons were liable only to those who built a building or caused work to be done on a structure. So third parties injured because of an architect's or builder's negligent acts had no remedy against the architect or builder. *Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1089 (Utah 1989).

*MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916) struck down privity in products liability cases. Later, relying on *MacPherson,* courts began abandoning privity in actions against architects and builders. In response, the building industry convinced legislatures in many states to pass statutes limiting the duration of liability of construction professionals. The statutes differ in various ways. But they do have one thing in

common: the time within which an action is filed begins from some date associated with the completion of construction, not from the time of injury. So these statutes are statutes of repose, not statutes of limitation. *Horton*, 785 P.2d at 1089–90.

The Iowa legislature responded by passing Iowa Code section 614.1(11). It became effective April 21, 1986. 1986 Iowa Acts ch. 1120, § 1. The statute provides:

In addition to limitations contained elsewhere in this section, an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury or death. However, this subsection does not bar an action against a person solely in the person's capacity as an owner, occupant, or operator of an improvement to real property.

We have characterized this as a statute of repose, which closes the door after fifteen years on certain claims arising from improvements to real property. *McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993). The fifteen-year period begins to run from the date of the act or omission causing the injury or death. *Id.* at 409. Here the furnace was purchased in 1969. So the period began to run at least from that date and expired in 1984. If the statute applies, all of Mapco's claims are barred.

II. *Whether a Manufacturer Can Create an Improvement to Real Property.*

 This issue concerns the language "arising out of the unsafe or defective condition of an improvement to real property." Iowa Code § 614.1(11). Mapco contends that the control valve cannot be an improvement to real property.

Mapco's argument in support of this contention is this. The control valve falls within the broad definition of "goods" under Iowa's uniform commercial code. *See* Iowa Code § 554.2105(1). As a good, the control valve is subject to implied warranties of merchantability and fitness for a particular purpose. Those warranties extend to persons who may reasonably be expected to use, consume, or be affected by the goods and are injured. in person or property because of a breach of warranties. *See* Iowa Code § 554.2318. If those goods are considered improvements to real property, the warranties could be lost before any injury ever occurred because of the section 614.1(11) bar. This result would create a clash between the warranty statutes and the statute of repose. The legislature never intended such a result. The only way to resolve the conflict is to say that goods are not improvements to real property and improvements to real property are not goods.

The short answer to all of this is that as a practical matter a good can be an improvement to real property as we will shortly explain. The legislature recognized this fact. Nevertheless, it made a judgment call to impose the bar although the warranties could become worthless before an injury ever occurred. All of what we say is borne out in section 614.1(11) because there the legislature expressly bars an action based on implied warranty. This language is without limitation and is therefore broad enough to include warranties in the uniform commercial code.

That leads us to the question whether the control valve is an improvement for section 614.1(11) purposes. The statute does not define the word "improvement," so we look to its common, ordinary meaning. *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 294 (Iowa 1994) (citation omitted). An improvement means

a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

Webster's Third New International Dictionary 1138 (P. Gove ed. 1993).

The furnace—including its component control valve—was an integral part of the house.

Without the valve, the furnace could not work properly. Without a properly working furnace, the home could not be comfortably used during cold weather. So as a part of the furnace, the control valve was a betterment of the Krull home. This betterment (1) enhanced the home's value, (2) involved the expenditure of labor or money, and (3) was designed to make the home more useful or valuable. So, applying the dictionary meaning, we conclude the control valve was an improvement to real property. *Cf. J.H. Westerman Co. v. Fireman's Fund Ins. Co.,* 499 A.2d 116, 119 (D.C.App.1985) (heating system, including its component Klixon switches, was an "improvement to real property" under statute of repose because built-in heating system was an integral part of the building, without which the building could not have been used for business); *Cyrus v. Henes,* 89 Ohio App.3d 172, 175–77, 623 N.E.2d 1256, 1258–59 (1993) (gas conversion unit in furnace was an improvement to realty because it was an integral part of furnace which itself was an improvement to realty; unit added value to the realty and enhanced the realty's use).

### III. *Whether Section 614.1(11) Applies to Manufacturers of Improvements.*

Mapco's fallback position is that the legislature did not intend to protect manufacturers of improvements from suit under section 614.1(11). For reasons that follow, we disagree.

■ In interpreting statutes, we try to give effect to legislative intent. *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 152 (Iowa 1992) (citation omitted). When the statutory language is plain and its meaning is clear, we should not reach for meaning beyond the statute's express terms or resort to rules of statutory construction. *Meier v. Sac & Fox Indian Tribe,* 476 N.W.2d 61, 63–64 (Iowa 1991) (citations omitted). In searching for legislative intent, we are bound by what the legislature said, not by what it should or might have said. So we cannot under the guise of statutory interpretation enlarge or otherwise change terms of a statute. *State v. Jones,* 464 N.W.2d 241, 242 (Iowa 1990) (citation omitted).

■ The plain language of section 614.1(11) bars all actions that meet two requirements. First, the plaintiff's injuries must have resulted from the alleged defective and unsafe condition of an improvement to real property. Second, fifteen years must have passed since the date of the act or omission that allegedly caused the injuries. Section 614.1(11) bars all suits that meet these two conditions. A defendant's identity is not relevant in determining whether the bar applies. *Cf. Rose v. Fox Pool Corp.,* 335 Md. 351, 359, 643 A.2d 906, 910 (1994) (reaching same conclusion on similar reasoning in interpreting similar statutory language).

The cases that Mapco relies on interpret statutes that define specific classes for whom liability is cut off after a certain number of years. *See, e.g., Uricam Corp. v. W.R. Grace & Co.,* 739 F.Supp. 1493, 1494 (W.D.Okla. 1990) ("No action in tort to recover damages ... shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement."); *Stanske v. Wazee Elec. Co.,* 722 P.2d 402, 404 (Colo.1986) (en banc) ("All actions against any architect, contractor, builder or building vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property."). In contrast, section 614.1(11) cuts off liability for *"the defendant"* alleged to be the "cause of the injury" after more than fifteen years. Our statute is therefore much broader in terms of coverage than these statutes because it does not name classes but just refers to "the defendant" as the covered party. So the cases Mapco relies on are distinguishable.

In addition, section 614.1(11) expressly excludes claims against persons in their capacity as owners, occupants or operators of improvements to real property. Manufacturers are conspicuously missing from this listing. Because the legislature has provided an exception, we presume no others were intended. *In re Estate of Mills,* 374 N.W.2d 675, 677 (Iowa 1985). So claims against manufacturers are presumed not to be claims excluded from the bar of the statute. *Cf. Rose,* 335 Md. at 359, 643 A.2d at 910 (using similar reasoning and reaching same conclusion as to similar exclusion).

We conclude that section 614.1(11) applies to manufacturers of improvements to real property. As a manufacturer of such an improvement, Honeywell is covered by the fifteen-year time constraint of section 614.1(11). So Mapco's indemnity action is barred because it was "brought more than fifteen years after the date on which occurred the act or omission of [Honeywell] alleged in the action to have been the cause of the injury."

### IV. *Whether a Negligent Recall Claim is Barred by Section 614.1(11).*

With this issue, Mapco tries to salvage a tort action by splitting its negligence claim in two. Mapco argues there are two distinct torts: one is the negligent design and manufacture of the control valve and the other is the subsequent negligent recall. Even if its first claim is barred by section 614.1(11), Mapco insists its negligent recall claim is not.

Assuming, without deciding, that there is such a theory as negligent recall, section 614.1(11) bars that claim too. Section 614.1(11) bars all actions "arising out of the unsafe or defective condition of an improvement to real property." The control valve on the Krull's furnace was the allegedly unsafe or defective condition. The fifteen-year repose period begins to run with "the act or omission of the defendant alleged in the action to have been the cause of the injury." Mapco alleged that Honeywell's negligent design and manufacture of the valve caused the damages. Without such a defect involving the valve, the negligent recall claim would never have arisen. The claims arise from the same alleged breach of duty. So the negligent recall claim necessarily falls within the bar of the statute. *Cf. Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 527, 418 N.E.2d 207, 212 (1981) (products liability statute of repose applied to negligent failure to warn claim because the claim resulted from the manufacture, construction or design of the product).

That brings us to the last issue.

### V. *Whether Section 614.1(11) Violates Equal Protection Guarantees.*

Mapco believes that section 614.1(11) violates the equal protection clauses of the federal and Iowa Constitutions. *See* U.S. Const. amend XIV ("[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws"); Iowa Const. art. I, § 6 (prohibits laws "grant[ing] to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens").

Mapco asserts that the statute as written is "discriminatory," denying Mapco the opportunity to seek indemnity from those who are allegedly protected by the statute. The discrimination Mapco is talking about allegedly results from the legislature's exclusion of owners, occupants, and operators of an improvement to real property from section 614.1(11) coverage. Such a result, Mapco insists, grants immunity to the manufacturers who—but for the statute—should and would be primarily liable for injuries to third parties caused by the manufacturers' negligence. Yet, owners and others in the excluded class are burdened with the liability for these damages because of their common law duty to use reasonable care to protect invitees. So, Mapco concludes, section 614.1(11) creates an unreasonable and arbitrary classification.

**A.** *Standing.* Honeywell denies Mapco's standing to raise this constitutional challenge because Mapco does not claim the statute violates its own right to equal protection. Stated another way, Mapco neither belongs to the group granted immunity nor to the group that is without immunity.

■ Honeywell is right in asserting that Mapco lacks standing in its own right to argue that the statute deprives owners and others in the excluded class of equal protection. Generally, a party may not assert the rights of others not before the court. *Elview Constr. Co. v. North Scott Community School Dist.*, 373 N.W.2d 138, 141 (Iowa 1985); *State v. Henderson*, 269 N.W.2d 404, 405 (Iowa 1978). As one court put it, "[t]his rule is based in part on the notion that a third party cannot effectively vindicate the rights of others." *Klein v. Catalano*, 386 Mass. 701, 714, 437 N.E.2d 514, 523 (1982).

But this rationale does not apply here. Section 614.1(11) bars Mapco from suing those defendants protected by the statute. So Mapco's interest in the equal protection challenge is as great as that of the owners and others excluded from the protection of section 614.1(11). We think therefore that Mapco has standing in a representative capacity to raise the potential rights of the potential defendants excluded from the statute's protection. *Cf. Klein*, 386 Mass. at 714, 437 N.E.2d at 523 (applying same reasoning to lack of standing challenge to statute of repose barring injured plaintiff from suing architect protected by statute that excluded owners of property and others from its protection).

■ B. *The merits.* We presume statutes are constitutional. A challenger must show beyond a reasonable doubt a constitutional violation. That means the challenger must negate every reasonable basis that might support the statute. *Harden v. State*, 434 N.W.2d 881, 885 (Iowa 1989) (citations omitted).

■ In equal protection challenges based on the federal and Iowa Constitutions, we usually interpret both federal and state equal protection provisions the same. *Id.* Because Mapco raises no issue regarding suspect classifications or fundamental rights, our standard of review is the rational basis test. *Id.* A state can treat classes of persons unequally if a rational basis for the unequal treatment exists. *State v. Wehde*, 258 N.W.2d 347, 352 (Iowa 1977).

Not surprisingly, the cases go both ways on the constitutional issue Mapco raises. *Compare Fujioka v. Kam*, 55 Haw. 7, 9–13, 514 P.2d 568, 570–72 (1973) (statute of repose protected licensed building professionals but not owners; held that (1) classification was not based on reasonable consideration of differences between the two classes and (2) such classification had no fair and substantial relation to the object of the legislation) *with Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 203–05, 551 N.E.2d 938, 948–49 (1990) (holding that such classification was based on valid distinction). *Sedar* collects the jurisdictions that have upheld such statutes against equal protection challenges and those jurisdictions are many. *See Sedar*, 49 Ohio St.3d at 203 n. 8, 551 N.E.2d at 948 n. 8. In addition, on this issue the United States Supreme Court has dismissed appeals from state courts for lack of a substantial federal question. *See, e.g., Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870 (Tex.Civ.App.1981), *appeal dismissed*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39, *reh'g denied*, 459 U.S. 1059, 103 S.Ct. 478, 74 L.Ed.2d 625 (1982).

■ A local federal district court upheld section 614.1(11) against a federal and Iowa equal protection challenge. *See Patel v. Fleur De Lis Motor Inns, Inc.*, 771 F.Supp. 961 (S.D.Iowa 1991) (mem.). In *Patel*, the court found a "rational basis for the legislature's decision to exclude owners, occupants, and operators from the protection afforded others who improve real property." *Id.* at 968. The rationale, which we adopt, is this:

> Owners have continuing control of the premises and are responsible for their repair and maintenance. In contrast, architects and builders have no control over the premises once they are turned over to the owner.

*Id.* (citation omitted). *See also McKiness*, 507 N.W.2d at 410 (applying same rationale to section 614.1(11) in context of due process challenge).

We should also point out that property owners have a defense if they did not know nor had any reason to anticipate the unsafe or defective condition of the premises. *Capener v. Duin*, 173 N.W.2d 80, 85 (Iowa 1969). If they do know about the condition,

the liability potential should remain to prompt them to correct it.

We find additional rationale in *McKiness.* There we said that for due process purposes the legislature could reasonably have decided that

> [t]he lapse of time between completion of an improvement and initiation of suit often results in the unavailability of witnesses, memory loss and a lack of adequate records. Another problem particularly critical is the potential application of current improved state-of-the-art standards to cases where the installation and design of an improvement took place many years ago.

*McKiness,* 507 N.W.2d at 410 (citation omitted).

For all these reasons, we conclude section 614.1(11) does not violate the equal protection provisions of either constitution.

VI. *Conclusion.*

Mapco's claims against Honeywell are time-barred under the plain language of Iowa Code section 614.1(11). That includes Mapco's negligent recall claim. Finally, we reject Mapco's assertion of an equal protection challenge.

Finding that the district court's ruling granting Honeywell summary judgment was correct in all respects, we affirm.

**AFFIRMED.**