Hillsborough-southern judicial district
No. 2011-151

## PHANEUF FUNERAL HOME

### v.

## LITTLE GIANT PUMP COMPANY & a.

Argued: April 11, 2012
Opinion Issued: June 29, 2012

728

*Sherman Law, PLLC*, of Portsmouth (*John P. Sherman* on the brief), and *Cozen O'Connor*, of Philadelphia, Pennsylvania (*Joseph F. Rich* on the brief and orally), for the plaintiff.

*Law Offices of John B. Schulte*, of Manchester (*Nicholas J. Deleault* on the brief and orally), for defendant Little Giant Pump Company.

*Mallory & Friedman, PLLC*, of Concord (*Christine Friedman* on the brief and orally), for defendant Boyer Interior Design.

*Cornell & Gollub*, of Boston, Massachusetts (*Peter M. Durney* on the brief), and *Littleton Joyce Ughetta Park & Kelly LLP*, of Purchase, New York (*Jason P. Sultzer* on the brief and orally), for defendant Leviton Manufacturing Company.

*Law Offices of Thomas M. Niarchos*, of Boston, Massachusetts (*David J. Donovan* on the brief and orally), for defendant The Elegant Earth, Inc. d/b/a The Arbor.

LYNN, J. The plaintiff, Phaneuf Funeral Home (Phaneuf),[1] appeals orders of the Superior Court (*Colburn*, J.) granting motions for summary judgment in favor of the defendants, Little Giant Pump Company (Little Giant), Boyer Interior Design (Boyer), Leviton Manufacturing Company (Leviton), and The Elegant Earth, Inc. (Elegant). We affirm the grant of summary judgment in favor of Boyer, but otherwise reverse.

I

The record reflects the following facts. In 1998, Phaneuf hired Boyer to do interior design and light renovation work in the basement and adjacent hallway of the funeral home. In the hallway, Boyer installed a wall-mounted water fountain that it purchased from Elegant, an Alabama-based household goods retailer. Defendant Leviton supplied the fountain's power cord to Little Giant, which manufactured the fountain.

The water fountain was pre-assembled, and could be used simply by hanging it from the wall and plugging it into an existing wall power outlet. Phaneuf, however, wanted something more permanent that would blend with the wall. To satisfy this preference, Boyer designed a back plate to be affixed to the wall, attached the fountain to the back plate, and used a faux finish paint application to blend the fountain and the back plate with the wall. Boyer finished installing the water fountain in January 1999.

On March 17, 2007, a fire broke out at the funeral home. Alleging that the water fountain's defective pump and power cord caused the fire, Phaneuf brought negligence and strict product liability claims against each defen-

---

[1] Although nominally brought in the name of its insured, Phaneuf Funeral Home, the real plaintiff in interest in this case is State Fire and Casualty Insurance Company, which, after paying Phaneuf's claim for damages arising out of the fire, brought this subrogation action against the defendants.

dant, although it later withdrew its negligence claim against Boyer. Each defendant moved for summary judgment, arguing that Phaneuf's claims were time-barred by RSA 508:4-b, I (2010), the statute of repose for "Damages From Construction." The superior court agreed, and granted each motion. This appeal followed.

II

The statute of repose for damages from construction provides, in pertinent part:

> Except as otherwise provided in this section, all actions to recover damages . . . arising out of any deficiency in the creation of an improvement to real property, including without limitation the design, labor, materials, engineering, planning, surveying, construction, observation, supervision or inspection of that improvement, shall be brought within 8 years from the date of substantial completion of the improvement, and not thereafter.

RSA 508:4-b, I.

Phaneuf concedes that its action was filed outside the eight-year time period set forth in RSA 508:4-b, but argues: (1) that this statute is inapplicable to product liability actions;[2] (2) that the fountain did not constitute an "improvement to real property" as the statute requires; and (3) in the alternative, that the statute applies only to those who provide products and services that are particularized to or "specifically designed" for the improvement in which they are used or incorporated — thus excluding product manufacturers and retail sellers.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

In matters of statutory construction, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *New Hampshire Health Care Assoc. v. Governor*, 161 N.H. 378,

---

[2] The plaintiff asserts that if a statute of repose did apply to its claims, the applicable one would be RSA 507-D:2 (2010), which established a twelve-year repose period for product liability actions, and further notes that in *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512 (1983), we held this statute unconstitutional.

385 (2011). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We read words and phrases not in isolation, but in the context of the entire statute and statutory scheme. *Id.* When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. *Id.*

## A

Phaneuf first argues that, because the statute does not use the words "product," "products," or "product liability," it does not afford protection against product liability claims, but rather is "limited to claims of negligence for design or construction of an improvement." RSA 508:4-b provides, however, that "*all actions* to recover damages . . . arising out of any deficiency in the creation of an improvement to real property" must be brought within eight years from the date of substantial completion of the improvement. That language unambiguously encompasses all types of claims, as long as they arise from a deficiency in the creation of an improvement to real property. We therefore decline Phaneuf's invitation to adopt a categorical rule excluding product liability actions from the statute's coverage.

We also do not share Phanuef's concern that by applying RSA 508:4-b to product liability claims we will effectively "extinguish" them. While RSA 508:4-b, I, applies to all types of claims regardless of the theory of liability, the statute's reach is limited to actions "arising out of any deficiency in the creation of an improvement to real property." Although the statute may result in certain product manufacturers or sellers escaping liability in certain circumstances, RSA 508:4-b, I, does not in any sense create a statute of repose for all product liability claims.

## B

Next, Phaneuf contends that there is a genuine question of material fact as to whether the wall fountain constitutes an improvement to real property. In interpreting RSA 508:4-b, we construe its words and phrases according to their common and approved usage unless from the statute it appears that a different meaning was intended. *N.H. Resident Ltd. Partners of Lyme Timber Co. v. N.H. Dep't of Revenue Admin.*, 162 N.H. 98, 101 (2011). RSA 508:4-b does not define the term "improvement"; nor have we had occasion, before today, to adopt a definition. After carefully reviewing the common law from other jurisdictions, we conclude that an improvement means an alteration to or development of real property that either (1) enhances or is intended to enhance its value or (2) improves or is intended to improve its use for a particular purpose. *See Plato Associates v. Envtl. Compliance Svcs.*, 9 A.3d 698, 706 (Conn. 2010); *Brennaman v.*

*R.M.I. Co.*, 639 N.E.2d 425, 429 (Ohio 1994) (focusing on whether the item "increased value . . . to the realty when installed for its intended purpose"); *Barron v. Kerr-McGee Rocky Mountain Corp.*, 181 P.3d 348, 350-51 (Colo. App. 2007) (noting that an improvement is a permanent addition to real property that "may, among other things, enhance the real property's capital value"); *accord* BLACK'S LAW DICTIONARY 826 (2009) (defining improvement as "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance"); 41 AM. JUR. 2D *Improvements* § 1, at 336 (2005) (defining improvement as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs"). *See generally* Annotation, *What Constitutes "Improvement to Real Property" for Purposes of Statute of Repose or Statute of Limitations*, 122 A.L.R. 5TH 1 (2004).

We need not set forth a comprehensive list of factors trial courts must use in determining whether a particular item constitutes an improvement under RSA 508:4-b as defined above. Even construing the facts in a light most favorable to the plaintiff, the undisputed facts in the record establish that the water fountain at issue was both custom-designed by Boyer to become a permanent installation in the funeral home's structure and constructed for the particular purpose of improving the home's aesthetics. *See* 41 AM. JUR. 2D *Improvements* § 1, at 336 ("[A] fixture, by definition, is an improvement to real property, but an improvement to real property need not be a fixture."). Additionally, removing the fountain would have damaged the wall. Aside from the conclusory assertion in its brief that a question of fact exists as to whether the installed fountain was an improvement, Phaneuf has identified no facts in the summary judgment record to undercut the superior court's conclusion that, while the fountain may not have been an improvement when first purchased and hung upon the wall, it became one when Boyer integrated it into the building's structure.

C

Phaneuf next contends that, to the extent that RSA 508:4-b affords any protection to manufacturers and sellers of products that later become improvements to real property, it bars claims only against those who provide products particularized to the improvement at issue — *i.e.*, those who "participated in the enterprise" of improving real property. Whether product manufacturers can claim the protection of the statute of repose based upon an alleged defect in a product that later becomes part of an improvement to real property is a question of first impression. Other

jurisdictions are split on whether to read similar statutes to protect such product manufacturers, *see, e.g., Krull v. Thermogas Co. of Northwood IA.*, 522 N.W.2d 607, 613 (Iowa 1994); *Rose v. Fox Pool*, 643 A.2d 906, 917 (Md. 1994), or to interpret them more narrowly to protect only persons or entities who are involved, in some way, in the particular improvement at issue, *see, e.g., State Farm v. W.R. Grace & Co.-Conn.*, 24 F.3d 955, 957 (7th Cir. 1994); *Brown v. Overhead Door Corp.*, 843 F. Supp. 482, 490 (W.D. Ark. 1994); *Dighton v. Federal Pacific Elec. Co.*, 506 N.E.2d 509, 515 (Mass. 1987); *Winkel v. Windsor Windows and Doors*, 983 So. 2d 1055, 1059 (Miss. 2008).

In *Rose*, the court held that a pool manufacturer could claim protection under a Maryland statute providing a twenty-year limitation for "all actions resulting from the defective and unsafe condition of an improvement to real property." *Rose*, 643 A.2d at 915. After a lengthy review of that statute's legislative history, the court distinguished the Maryland statute's language from out-of-state cases excluding product manufacturers from coverage under a particular statute of repose. The court noted that the statutes in those cases were all variants of a model statute covering particular *types of defendants* performing particular *types of activities* — *i.e.*, those "persons performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement." *Id.* at 916. In contrast, the Maryland statute contained broad language covering all actions resulting from the defective and unsafe condition of an improvement. Thus, manufacturers whose products were incorporated into improvements could claim protection under the statute.

Similarly, the court in *Krull* held that an action against a manufacturer of an allegedly defective furnace control valve was time-barred under a statute of repose with language similar to that in *Rose*. *See Krull*, 522 N.W.2d at 611 (barring actions "arising out of the unsafe or defective condition of an improvement to real property"). Like *Rose*, *Krull* also distinguished those cases interpreting similar statutes of repose more narrowly, noting that those statutes "define specific classes for whom liability is cut off after a certain number of years." *Id.* at 612. Because the statute in *Krull* referred only to "the defendant" as the covered party, it applied more broadly and could be applied to bar suits against product manufacturers. *Id.*

■■ Were RSA 508:4-b to bar all actions arising out of a deficiency "in an improvement," rather than "in the creation of an improvement," this case might be more analogous to *Rose*, *Krull*, and other decisions that extend protection under the statute of repose to product manufacturers who are in no way involved in the act of improving the value of real estate. But by

covering actions arising out of a deficiency in the *creation* of an improvement, the legislature indicated its intent to protect only those who are involved in some way in the transformation of a product into an enhancement to the value or use of real estate, based upon their role in that transformation. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 532 (unabridged ed. 2002) (defining "creation" as "the act of creating; . . . the act or practice of making, inventing, devising, fashioning, or producing"). This interpretation is confirmed by the list of covered activities in the statute, all of which relate to the process of improving real property: "design, labor, materials, engineering, planning, surveying, construction, observation, supervision or inspection." To the extent that "materials" could be read to cover all manufacturers whose products are incidentally incorporated into an improvement, such a reading is inconsistent with the general rule that the action must arise out of a deficiency in the *creation* of the improvement as well as the basic principle that words are known by the company they keep. *See United States v. Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated."). The other words in the statute's list involve activities that relate to the creation of an improvement to real estate; thus, "materials" cannot be read in isolation, but must be similarly construed to have some connection to the process by which an improvement is created.

Additionally, construing "materials" more broadly to cover all actions arising from defective products, irrespective of whether the allegedly wrongful activity of the manufacturer was connected in some way with the creation of the improvement itself, would protect every producer whose product fortuitously happens to become incorporated into an improvement. This is not what the legislature could have intended when it barred actions arising out of deficiencies *in the creation* of an improvement. *Cf. State Farm*, 24 F.3d at 957.

The specific facts of this case do not require that we determine whether and under what circumstances product manufacturers can claim the protection of RSA 508:4-b.[3] That is because the water fountain at issue is a generic product that was neither manufactured to be an improvement nor specifically designed to become one; indeed, it was designed at the

---

[3] In particular, we need not decide whether some products are so inherently related to the construction industry that their manufacturers could claim the protection of RSA 508:4-b. *See, e.g., Fine v. Huygens, DiMella, Shaffer & Associates*, 783 N.E.2d 842, 847 (Mass. App. 2003) (distinguishing, for purposes of statute of repose, between "mere suppliers of standardized products," on the one hand, and those who perform "acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors," on the other); *Ball v. Harnischfeger Corp.*, 877 P.2d 45, 50 (Okla. 1994) (manufacturer only protected by statute of repose when acting as a designer, planner, construction supervisor, construction observer, or

outset to be simply hung on a wall. Nothing in the record indicates that Elegant, Little Giant, or Leviton were involved in any way in the process of improving the value or use of real estate; indeed, the contractor had to create and follow a customized plan to incorporate the fountain into the structure of the funeral home. Moreover, Phaneuf's claims against these three defendants would have been the same whether or not the fountain was used to improve the real estate. Thus, its action against them cannot be said to arise out of a deficiency in the creation of an improvement. For this reason, the trial court erroneously granted summary judgment to Elegant, Little Giant, and Leviton.

In contrast, Phaneuf's action against Boyer does arise out of the creation of an improvement. Phaneuf hired Boyer to redesign and renovate the funeral home's "monument room" and adjacent hallway; as part of that enterprise, Boyer installed the fountain in the hallway of the funeral home by custom-designing a back plate, permanently affixing the back plate to the wall, attaching the fountain onto the back plate, and applying a faux finish paint to blend the fountain and the plate with the wall. As noted above, the fountain became an improvement when it was incorporated into the wall. Because Boyer's role was to install the fountain in a way that transformed it into an improvement as defined above, he is entitled to rely upon the protection of RSA 508:4-b.

In so holding, we reject Phaneuf's argument that its action arises not out of Boyer's role as the builder of an improvement, but as the seller of a defective product. Although, as noted above, the statute's inclusion of "materials" does not operate to protect product suppliers unless they were involved, in some way, in the creation of an improvement, the reference to materials does signify the legislature's intent, at the very least, to create a sphere of immunity for those in the construction trade who, in the course of that trade, select and use materials to create specific improvements to real property. *Cf. Winnisquam Reg. Sch. Dist. v. Levine*, 152 N.H. 537, 540 (2005) (noting that the legislature, by enacting RSA 508:4-b, intended to promote the public interest by "protecting the *building industry* from infinite liability," and that the statute concerned "those·involved in the *construction trade*" (emphases added)). Thus, as a designer and builder who selected the fountain and installed it into the funeral home, Boyer falls squarely within the protection of RSA 508:4-b, I. *Cf. Pendzsu v. Beazer East Inc.*, 557 N.W.2d 127, 132 (Mich. Ct. App. 1996) (rejecting argument that entity that designed, manufactured, and installed coke ovens was a

constructor); *Ferricks v. Ryan Homes*, 578 A.2d 441, 443 (Pa. Super. 1990) (manufacturer not protected by statute of repose because it did not construct or design an improvement but merely furnished construction materials).

supplier for purposes of statute of repose); *Ball v. Harnischfeger Corp.*, 877 P.2d 45, 50 (Okla. 1994) ("If the manufacturer was acting as a designer, planner, construction supervisor or observer, or constructor, the statute of repose will apply. It is the specialized expertise and rendition of particularized design which separates those protected from mere manufacturers and suppliers."); *Condit v. Lewis Refrigeration Co.*, 676 P.2d 466, 468-69 (Wash. 1984) (statute of repose "protects individuals who work on structural aspects of the building but not manufacturers of heavy equipment or nonintegral systems within the building"). To read RSA 508:4-b, I, as Phaneuf urges would effectively eviscerate the protection it was intended to offer to the construction industry, because virtually all persons involved in the creation of an improvement are likely to furnish some kind of "product" as part of their work.

## III

For the reasons stated above, we affirm the trial court's grant of summary judgment as to Boyer, but reverse it as to the remaining defendants.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.