# IN THE COURT OF APPEALS OF IOWA

No. 16-0643
Filed November 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PAUL LEE DeGROOT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, District Associate Judge.

A defendant appeals his conviction for possession of a controlled substance, third offense. **AFFIRMED.**

Thomas P. Frerichs of Frerichs Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

Paul DeGroot appeals his conviction for possession of a controlled substance, third offense, in violation of Iowa Code section 124.401(5) (2014), claiming the district court erred in denying his motion to suppress. First of all, DeGroot cannot assert another person's constitutional rights. Further, because DeGroot was not in custody when he admitted he had marijuana and he voluntarily turned over the drugs to the police, we find no error in the district court's denial of the motion and affirm DeGroot's conviction.

## I. Background Facts and Proceedings

On November 25, 2014, Tripoli Police Chief Daniel Banks set up a drug buy with a juvenile. Chief Banks learned from the juvenile that T.D., DeGroot's stepson, would be able to get marijuana from his parents and sell it to the juvenile. Just before the buy, the chief parked his unmarked vehicle where he observed T.D. take something out of his backpack and put it in his pocket. After approximately thirty seconds, the chief exited his vehicle and approached the two boys. There, he observed a small plastic bag containing a green leafy substance hanging halfway out of T.D.'s pocket. He told T.D. to hand over the bag. T.D. indicated his parents did not know he took the marijuana from their house, it was his father's marijuana, and there was more at home.

The chief advised T.D. he needed to escort him to city hall and contact his parents. The chief did not read T.D. his *Miranda*[1] rights and drove him the short

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (holding a person subject to custodial interrogation must be advised that "he has a right to remain silent, that any

3

distance to city hall. While the chief was escorting T.D. inside, DeGroot and his wife drove by and saw their son being escorted into city hall. They stopped and entered the building. The chief placed T.D. in his office and took DeGroot and his wife into the nearby city council meeting room to explain the situation. The chief explained that T.D. was caught attempting to sell marijuana and T.D. had told the chief the marijuana belonged to DeGroot. DeGroot responded with laughter.

DeGroot initially denied there was more marijuana at his home, but after the chief explained he would either get a search warrant or DeGroot could voluntarily handover the marijuana, DeGroot agreed to voluntarily hand it over. DeGroot then accompanied the chief in the front seat of his patrol car to DeGroot's home, which was outside the city limits of Tripoli. During the ride, DeGroot requested he not be charged with possession as it would be his third possession charge, and the chief advised DeGroot that he would not charge DeGroot. When they arrived at the home, DeGroot retrieved the marijuana and turned it over to the chief. After the chief took possession of the marijuana he informed the Bremer County Sheriff's Department of the situation.

The sheriff decided to pursue the issue, and DeGroot was then charged with possession of a controlled substance, third or subsequent offense. DeGroot filed a motion to suppress evidence obtained from his statements, his stepson's statements, and stemming from an illegal search of his home. The district court denied DeGroot's motion. After a trial on the minutes of evidence, the district

statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

court found DeGroot guilty and sentenced him to 180 days in jail with all but four days suspended.

DeGroot appeals.

## II. Scope and Standard of Review

DeGroot claims the district court should have granted his motion to suppress, as amended, on federal and state constitutional grounds. Therefore, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011).

## III. Stepson's Statements

DeGroot asserts the district court should have granted his motion to suppress because his thirteen-year-old stepson's Fourth, Fifth, and Fourteenth Amendment rights were violated. Moreover, DeGroot asserts the chief violated Iowa Code sections 232.11[2] and 232.19[3] by failing to immediately notify him and his wife that his stepson was taken into custody. Because of these assertions, DeGroot contends his stepson was interrogated without being advised of his *Miranda* rights, and his stepson was not allowed to talk to his parents before making statements to police. *See* Iowa Code § 232.19. He asserts his stepson's statements and all evidence gathered as a result of those statements must be suppressed.

Generally, a party may not assert the rights of others not before the court. *Krull v. Thermogas Co. of Northwood*, 522 N.W.2d 607, 614 (Iowa 1994). Fourth

---

[2] Iowa Code sentence 232.11 provides a child with the right to be represented by counsel during certain stages of juvenile delinquency proceedings.
[3] Iowa Code sentence 232.19 provides a child may be taken into custody and the person taking the child into custody shall notify the child's parent, guardian, or custodian as soon as possible.

and Fifth Amendment rights are personal in nature and may not be asserted vicariously. *See State v. Graham*, 291 N.W.2d 345, 348-49 (Iowa 1980), *superseded on other grounds by* Iowa R. Crim. P. 2.11(6)(a), (c) *as stated in State v. Wells*, 629 N.W.2d 346 (Iowa 2001); *see also State v. Bakker*, 262 N.W.2d 538, 544 (Iowa 1978) ("[S]tanding to object to a search belongs only to the victim of illegal search and seizure. A litigant cannot invoke an alleged violation of constitutional rights of third persons."). Because this is a criminal prosecution brought against DeGroot, he may only assert alleged violations of his own constitutional rights, not rights personal to his stepson. We conclude DeGroot lacks standing to challenge the legality of his stepson's statements, and we decline to analyze the merits of DeGroot's claim on this issue or DeGroot's claims of statutory violations committed against his stepson.[4]

### IV. DeGroot's Statements

DeGroot next asserts the district court should have granted his motion to suppress with respect to the statements he made to Chief Banks because his constitutional rights were violated. Principally, DeGroot contends he was in

---

[4] In his reply brief, DeGroot asserts the State has waived the argument that DeGroot lacks standing to challenge the legality of his stepson's statements by failing to assert standing in front of the district court. We disagree that a party can waive standing. Our supreme court has held certain fundamental issues like subject matter jurisdiction cannot be waived by the parties failing to challenge it. *See Klinge v. Bentien*, 725 N.W.2d 13, 15-16 (Iowa 2006) ("The parties themselves cannot confer subject matter jurisdiction on a court by an act or procedure. Unlike personal jurisdiction, a party cannot waive or vest by consent subject matter jurisdiction."). Our supreme court has also held standing is jurisdictional and can be raised at any time. *Schott v. Schott*, 744 N.W.2d 85, 88 (Iowa 2008). Because subject matter jurisdiction cannot be waived and because standing is jurisdictional and can be raised at any time, we conclude the State's failure to raise the issue of standing before the district court is not fatal to its ability to challenge standing on appeal.

custody and interrogated without being read his *Miranda* rights when he was asked about marijuana in his home.[5]

The Supreme Court held that a suspect is in custody after the suspect is formally arrested or "otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "A custody determination depends on objective circumstances, not the subjective belief of the officers or the defendant." *State v. Bogan*, 774 N.W.2d 676, 680 (Iowa 2009). "In determining whether a suspect is in custody at a particular time, we examine the extent of the restraints placed on the suspect during the interrogation in light of whether a reasonable man in the suspect's position would have understood his situation to be one of custody." *State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009). We apply a four-factor test. *State v. Miranda*, 672 N.W.2d 753, 759 (Iowa 2003). These factors are "the language used to summon the individual, the purpose, place and manner of the interrogation, the extent to which the defendant is confronted with evidence of his guilt, and whether the defendant is free to leave the place of questioning." *State v. Simmons*, 714 N.W.2d 264, 274-75 (Iowa 2006).

Here, DeGroot was confronted with evidence of his guilt. However, the chief did not summon DeGroot; instead, DeGroot and his wife happened to be driving by when the chief escorted DeGroot's stepson into the city council building. DeGroot voluntarily entered the station and asked the chief what was going on. The police station is connected to the city hall, and the chief met with DeGroot and his wife in the city council meeting room, not a police interrogation

---

[5] We note that DeGroot does not point to any particular statement which he asserts should be suppressed but makes only general reference to the "brief interrogation."

room. Although the chief did not let either DeGroot or his wife speak to their son, the chief did not extensively question either the stepson or DeGroot. The chief quickly asked DeGroot if his son was correct that there was marijuana at home. DeGroot responded with a laugh but then confirmed there was additional marijuana and said he would voluntarily hand it over.

Additionally, the chief was the only officer to speak with DeGroot, and DeGroot was never placed in handcuffs. DeGroot was free to leave until the point in time when he admitted to possessing marijuana at his home. The record establishes DeGroot was not in custody when he admitted to possessing marijuana and would voluntarily produce the marijuana. Because DeGroot was not in custody during the encounter with the chief in city hall, no *Miranda* warning was required, and the motion to suppress DeGroot's admissions was properly denied.

## V. Consent to Search

DeGroot next contends his consent to search his home was coerced through threats of punishment and promises of leniency.

After DeGroot admitted to having marijuana in his home, the chief advised DeGroot the police would either obtain a search warrant or he could voluntarily turn over the marijuana. DeGroot indicated he would voluntarily turn over the marijuana. Even though DeGroot testified in the suppression hearing, "[I]t's either let somebody tear my house up or voluntarily give it over," nothing in the record indicates the chief threatened DeGroot; instead, he provided DeGroot with options of how he could obtain the evidence following DeGroot's admission.

Thereafter, as DeGroot rode with the chief in the front seat of the squad car, he asked whether the chief could let this one go because "he couldn't afford another charge." The chief responded by indicating he would not pursue charges. When they reached the house, the chief followed DeGroot into the living room, where DeGroot retrieved a mason jar of marijuana. No search of the house was conducted. Afterwards, the chief discussed with DeGroot that he should turn himself in the next morning to the county sheriff. Because the chief could not turn a blind eye to the illegal conduct, his only option was to take possession of the marijuana and notify the country sheriff with the information regarding DeGroot's possession of the marijuana.

As he left the house, the chief joked with DeGroot that "every Thursday, on the side of the road, give me a glass of water." DeGroot asserts this statement further shows the chief promised leniency. The record, however, supports that this statement was made in jest. The chief did not press charges nor did he advise the Bremer County Sheriff to press charges. Rather, he testified he notified the sheriff's office that DeGroot provided him with marijuana and he left it up to that office to decide whether to pursue any charge against DeGroot.

The record establishes there was no search of DeGroot's residence. Further, DeGroot voluntarily offered to produce the marijuana before the chief stated he would not pursue charges. Accordingly, we find DeGroot voluntarily agreed to produce the marijuana with no promise of leniency or coercion. Further, we find DeGroot's subjective belief that the chief would not charge him does not preclude another office, in this case the sheriff's office, from pursuing

charges. Therefore, DeGroot's will was not overborne, and his capacity for self-determination was not critically impaired. *See State v. Nolan*, 390 N.W.2d 137, 142 (Iowa Ct. App. 1986). The totality of the circumstances reveals the absence of any coercion and demonstrates that DeGroot's production of marijuana was voluntary. Therefore, the district court properly denied DeGroot's motion to suppress the marijuana evidence.

## VI. Fruit of the Poisonous Tree

Finally, DeGroot asserts that all evidence obtained through his or his stepson's statements and his turning over the marijuana should be suppressed because all evidence was obtained as fruit of the poisonous tree.

The phrase "fruit of the poisonous tree" refers to indirect or secondary evidence obtained as a result of a prior illegality. *See Nardone v. United States*, 308 U.S. 338, 341 (1939). Under the doctrine, the "fruits" that resulted from the prior illegality are excluded if they were an exploitation of that prior illegality. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Thus, the doctrine operates as an extension of the exclusionary rule. *State v. Lane*, 726 N.W.2d 371, 380 (Iowa 2007).

Since DeGroot could not assert a violation of his stepson's constitutional rights, he cannot challenge, in his own motion to suppress, evidence obtained from his stepson's statements. Further, evidence obtained from DeGroot's noncustodial, voluntary statements, as well as his voluntary production of marijuana, was obtained legally. Therefore, none of the evidence was "fruit of the poisonous tree."

## VII. Conclusion

Because DeGroot was not in custody when he admitted to possessing marijuana, he voluntarily turned over the marijuana, he lacks standing to assert the constitutional rights of his stepson, and the fruit-of-the-poisonous-tree doctrine is inapplicable, the district court properly overruled DeGroot's motion to suppress, and we affirm.

**AFFIRMED.**