# IN THE COURT OF APPEALS OF IOWA

No. 15-0943
Filed April 19, 2017

SHARI KINSETH and RICKY KINSETH,
**Co-executors of the Estate of Larry
Kinseth, Deceased, and SHARI KINSETH,
Individually,**
        Plaintiffs-Appellees/Cross-Appellants,

vs.

**WEIL-McLAIN COMPANY,**
        Defendant-Appellant/Cross-Appellee,

and

**STATE OF IOWA, ex. rel. CIVIL
REPARATIONS TRUST FUND,**
        Intervenor.
_____

        Appeal from the Iowa District Court for Wright County, Stephen P. Carroll,

Judge.


        Defendant appeals the jury's award of damages and punitive damages to

plaintiffs on theories of negligence, product liability, and breach of implied

warranty of merchantability, and plaintiffs cross-appeal. **REVERSED AND

REMANDED FOR NEW TRIAL ON THE APPEAL, AFFIRMED ON THE

CROSS-APPEAL.**


        Richard C. Godfrey, Scott W. Fowkes, Howard M. Kaplan, and Ryan J.

Moorman of Kirkland & Ellis L.L.P., Chicago, Illinois;, William R. Hughes Jr. and

Robert M. Livingston of Stuart Tinley Law Firm, L.L.P., Council Bluffs; and Edward J. McCambridge and Jason P. Eckerly of Segal McCambridge Singer & Mahoney, Ltd., Chicago, Illinois; for defendant-appellant/cross-appellee.

Misty Farris and Lisa W. Shirley of Simon Greenstone Panatier Barlett, P.C., Dallas, Texas, and James H. Cook of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for plaintiffs-appellees/cross-appellants.

Thomas J. Miller, Attorney General, and Richard E. Mull, Assistant Attorney General, for intervenor.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Weil-McLain Company appeals the jury's award of damages and punitive damages to plaintiffs on theories of negligence, product liability, and breach of implied warranty of merchantability arising from the death of Larry Kinseth as a result of exposure to asbestos, and plaintiffs cross-appeal. We find the district court abused its discretion in denying Weil-McLain's motions for mistrial due to statements of plaintiffs' counsel during closing arguments, in violation of the court's motion in limine order. We affirm the district court's rulings on the admissibility of evidence. We conclude the district court erred by not including McDonnell & Miller valves on the special verdict form, but otherwise affirm the court's determination of which entities should be included in the special verdict form for the allocation of fault. Due to our decision reversing and remanding for a new trial, we make no ruling on the award of punitive damages. We reverse and remand for new trial on the appeal and affirm on the cross-appeal.

## I.     Background Facts & Proceedings

Kinseth worked in the heating and plumbing industry beginning in 1957. As part of his work, he tore out old boilers and installed new boilers, both in residential and commercial applications. At the time Kinseth was working in the heating and plumbing industry, boiler manufacturers sealed their products with asbestos as it was a fire retardant, and Kinseth was exposed to asbestos dust. Some of the boilers Kinseth installed were manufactured by Weil-McLain.

Kinseth developed mesothelioma, a type of cancer caused by exposure to asbestos. On January 7, 2008, Kinseth and his wife, Shari Kinseth, filed suit against forty-two companies he claimed were involved in his exposure to

asbestos, including Weil-McLain, on theories of negligence, product liability, and breach of an implied warranty of merchantability. Due to Kinseth's poor health, his testimony was preserved in an extensive videotaped deposition. Kinseth died in 2009, and his wife and son continued the action as co-executors of his estate.[1]

The district court determined Kinseth's claims arising from tearing out old boilers were barred by the Iowa statute of repose, Iowa Code section 614.1(11) (2007). The court determined, "once the boiler was installed, complete with the asbestos rope sealing, it became an improvement to real estate within the meaning of the Iowa statute of repose."[2] On the other hand, the court concluded Kinseth's exposure to asbestos before and during the installation process was not barred by the statute of repose. Based on this reasoning, the court granted partial summary judgment to Weil-McLain. Several defendants were removed from the case through summary judgment, and others settled with Kinseth; eventually, only Weil-McLain remained as a defendant.

Prior to trial, Weil-McLain filed a motion in limine. The district court ruled Kinseth could not refer to the amount of money Weil-McLain spent on its defense or make any argument about the need for the jury to send the defendant a message through its verdict. Weil-McLain received a citation in 1974 from the Occupational Safety and Health Administration (OSHA) for asbestos exposure at its manufacturing plant in Indiana. After the citation, Weil-McLain began attaching a warning to its asbestos-containing products. The district court determined the OSHA citation was not relevant on the issue of causation but was

---

[1] Kinseth's wife also continued her claim for loss of consortium. We will refer to plaintiffs collectively as "Kinseth."

[2] The parties have not appealed the district court's ruling on this issue.

relevant to punitive damages on the issue of the company's failure to warn prior to the citation and plaintiffs' expert could discuss it as "reliance" material.

The case proceeded to a jury trial. Plaintiffs claimed Kinseth had been exposed to asbestos rope and asbestos cement used in installing Weil-McLain boilers and dust arising from these products caused him to contract mesothelioma. Plaintiffs claimed Weil-McLain should have provided a warning that exposure to asbestos was dangerous. Weil-McLain claimed the evidence showed Kinseth only installed Weil-McLain boilers using asbestos rope, which contained chrysotile asbestos, and this type of asbestos did not cause mesothelioma. The company also claimed Kinseth was exposed to asbestos dust from the products of several other manufacturers and the other manufacturers did not provide warnings during the time period in question.

After closing arguments, Weil-McLain filed a motion for a mistrial, claiming counsel for Kinseth violated the court's rulings on the motion in limine in statements to the jury. The court denied the motion. After arguments on punitive damages, Weil-McLain filed a new motion for mistrial, and this motion was also denied by the court.

The jury returned a verdict awarding Kinseth $4 million in compensatory damages. Weil-McLain was found to be twenty-five percent at fault.[3] Additionally, Kinseth's wife was awarded $1 million for loss of consortium, and Weil-McLain was ordered to pay her $250,000. The jury also found Weil-McLain should pay $2.5 million in punitive damages. Kinseth's estate was awarded

---

[3] The judgment order states Weil-McLain was responsible to pay Kinseth's estate $875,000.

twenty-five percent of this amount, $625,000, and the remainder, $1,875,000, is to be paid to the Iowa Civil Reparations Trust Fund.

Weil-McLain filed motions for a new trial and for judgment notwithstanding the verdict. Kinseth also filed a contingent motion for new trial. The district court issued a combined ruling on these post-trial motions, finding: (1) the jury instructions were not improper; (2) there was not substantial evidence in the record to show Kinseth was exposed to asbestos from products manufactured by Peerless Pump Co., McDonnell & Miller, Bell & Gossett, Hoffman, and DAP, Inc., and the court did not submit these companies for consideration of fault; (3) the jury properly considered the fault of two bankrupt companies, Hercules, Inc. and Johns-Manville Corp.; (4) there was not sufficient evidence to submit a jury instruction on the comparative fault of Kinseth; (5) the award for medical expenses should be reduced from $500,000 to $131,233, based on the parties' stipulation;[4] (6) Weil-McLain was not entitled to pro tanto credit for plaintiffs' settlements with other companies; (7) due to the statute of repose, although Kinseth could not be compensated for exposure during tear outs of boilers, this did not preclude the jury from hearing evidence of such exposure; (8) the award of punitive damages was not excessive; (9) there was evidence to support punitive damages because Weil-McLain delayed issuing warnings and it did not test its products for asbestos exposure; and (10) remarks by plaintiffs' counsel during closing arguments did not affect the outcome of the case.

---

[4] Based on the court's ruling reducing the amount of the award for medical expenses, the award for compensatory damages was reduced from $4 million to $3,631,233.

Weil-McLain has appealed, claiming the district court should have granted its motions for mistrial due to the statements of plaintiffs' counsel during closing arguments, the court abused its discretion in admitting certain evidence, the jury should have considered the fault of three additional entities, and punitive damages were improper. Kinseth has cross-appealed, claiming the court should not have permitted the jury to apportion fault to two bankrupt entities.

## II.     Motions for Mistrial

Weil-McLain claims the district court should have granted its motions for mistrial because counsel for plaintiffs repeatedly violated the court's rulings during closing arguments.

"The primary purpose of a motion in limine is to avoid disclosing to the jury prejudicial matters which may compel declaring a mistrial." *Heldenbrand v. Exec. Council of Iowa*, 218 N.W.2d 628, 636 (Iowa 1974) (citation omitted). Where there has been a violation of a motion in limine, a motion for mistrial may be granted. *See Twyford v. Weber*, 220 N.W.2d 919, 923 (Iowa 1974). A party seeking a mistrial must show the opposing counsel's conduct was prejudicial. *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992). "'[U]nless it appears probable a different result would have been reached but for claimed misconduct of counsel for the prevailing party,' we are not warranted in granting a new trial." *Id.* (citation omitted).

A district court has broad discretion in ruling on a motion for mistrial. *Fry v. Blauvelt*, 818 N.W.2d 123, 132 (Iowa 2012). "Such discretion is a recognition of the trial court's better position to appraise the situation in the context of the full trial." *Id.* (citation omitted). We review a district court's ruling on a motion for

mistrial for an abuse of discretion. *Crookham v. Riley*, 584 N.W.2d 258, 268 (Iowa 1998).

    **A.**     *Statements During Closing Arguments*

    1.     Prior to trial, Weil-McLain filed a motion in limine seeking to prohibit plaintiffs from mentioning "the amount of money or time spent by the Defendant in the defense of this matter, including attorney time and expenses and expert witness time and expenses." At the hearing on the motion in limine, as to the amount of money or time spent by Weil-McLain on defense, counsel for plaintiffs stated:

> I think what they are trying to prohibit here is talking about how much money they spent on their lawyers or preparing for trial and not trying to talk about how much their experts are paid or how much time their corporate representative spent in preparation. If that's all they mean, it's agreed.

The district court granted the motion in limine.

    During closing arguments, counsel for plaintiffs stated: (1) "they had a very neat expensive graphic"; (2) "Here I cannot imagine being in your situation where you had experts on both sides that make obscene money. The money in this litigation to me is amazing, so who do you believe?"; (3) "You don't have to believe experts that are paid a lot of money, you can see it"; (4) "because even from their bought and paid-for science . . . they would have been violating OSHA"; (5) "you heard that there are 50 scientists that have published over 1,000 articles, they disagreed with what their paid expert says"; (6) "they paid a company tens of thousands of dollars to create a graphic to show you that"; (7) "35 percent of [the fourteen million she was asking in compensatory damages] is 4.9 million. That's half of what Mr. Rasmuson [defense expert] has made in two-

and-a-half years as a 43 year old man. Half"; (8) "Then explain to me why you spent half a million dollars for the test if it was as simple as people cutting rope a couple of times?"; and (9) on punitive damages, "What I suggest is anything that's in that one-to-three ratio of 4 million to 20 million is the right number. It is certainly within the realms of what they have paid in this litigation."[5] Additionally, she reviewed her arguments by stating:

> You heard Mr. Rasmuson made $9 to $10 million in less than two-and-a-half years. You heard Weil-McLain spent half a million dollars on the study that could have been done as easily as the two minutes we saw on this floor. We heard that to show us how a boiler is installed, an issue that's not even disputed, they hire DecisionQuest and spend tens of thousands of dollars for it. We've heard in this industry that $30 million went not to people suffering from mesothelioma, but to create literature to say brakes are safe.[6]

We conclude counsel for plaintiffs repeatedly violated the district court's ruling prohibiting the parties from mentioning the amount of money Weil-McLain was spending in defense in this litigation.

2.      In a related subject, the motion in limine also sought to prohibit "[a]ny reference to the wealth, power, corporate size or assets of Weil-McLain which would suggest to the jury that the jury ought to compare the relative wealth of the Plaintiffs and Defendant in answering the jury questions." On statements about the wealth and assets of Weil-McLain, plaintiffs' counsel stated:

> I absolutely agree with the concept. I'm concerned with the lack of specificity in what that means. . . . Where I think they have a problem is if you're trying to suggest because they have wealth, because they have power and this was a little family, think about the imbalance. I agree that's not appropriate. But there are scenarios where the assets or abilities of the corporation are just

---

[5] An objection to this statement was sustained.
[6] A relevancy objection to this last statement was sustained.

relevant to other issues, and I just wanted to be clear I'm going to go into those. Otherwise we have an agreement.

The district court granted Weil-McLain's motion in limine on this ground.

During closing arguments, counsel for plaintiffs stated, "you are trying to figure out how to make a company value pain and suffering of another human being. A company that values money maybe differently than people do in Wright County." She also stated, "as you consider the damages in this case, you are speaking from people in this community to make sure that the people who are hurt in this community are heard from a company that values things differently than I think most of us do." Counsel for plaintiffs compared the wealth of the company with the plaintiffs' situation, stating:

> And I want to acknowledge $100,000 would make this family rich. I mean's there's no question about that, that is an insane amount of money to most people. The numbers we talk about here of $30 million for brake stuff and $10 million are insane amounts of money for real people.

We determine plaintiffs' counsel's statements violated the district court's ruling on the motion in limine. Additionally, the statements as to the amount of money spent on the defense of the case also violate this ruling as statements about the large amounts spent by Weil-McLain on litigation highlight the corporate wealth of the company.

3.     The motion in limine requested a prohibition on statements making "[a]ny references, statements or arguments that the jury should attempt to send Defendant a message." At the hearing on the motion, counsel for plaintiffs stated, "I never use the language sending defendant a message, so I largely agree to this," and "But I just want to be very clear that I will not—and I'll state it

on the record—state, 'You need to send the defendants a message.'" The district court granted the motion in limine prohibiting the parties from using language about sending defendant a message.

During closing arguments, plaintiffs' counsel stated, "It is not about what the family needs, it is about sending a message to a company who you've evaluated how they spend some of their money, you've evaluated some of their actions with studies, what message they need in order to value this appropriately." The record shows counsel for plaintiffs again clearly violated the district court's ruling on the motion in limine.

4.      The motion in limine sought to prohibit evidence of other lawsuits, and counsel for plaintiffs agreed there should be no mention of any other lawsuits. In closing arguments for punitive damages she stated, "The last thing, and this is the one that they said is we have hurt you, they have their lawyer say it, no one at the company actually takes the stand and said that and having 30 years of lawsuits they claim they have been heard."[7]

We determine the motion in limine on this ground was violated as well.

5.      In addition to the violations of the district court's ruling on the motion in limine, Weil-McLain claimed plaintiffs' counsel improperly requested the jury to disregard the statute of repose. During closing arguments, counsel for plaintiffs stated:

> I want to talk about the importance of the statute of repose. All of that work tearing out insulation to Weil-McLain boilers cannot be considered. Can't. It is a rule, it says in every meso[thelioma] case functionally, because you don't find out you're sick until 15 years later you just can't do anything to it and it applies to Weil just

---

[7] An objection by Weil-McLain to this statement was sustained.

like it applies to all the other companies here, it really changed the nature of this case.

Shortly thereafter she stated,

> [A]nd so the effect of this rule, a rule I candidly don't understand, is not only do you not get to consider tearout of Weil-McLain boilers that happened many, many, many times, but you don't get to consider the fault of [another manufacturer] and where the actual exposures occurred. That is the effect of this bar after 15 years of exposure.

We determine plaintiffs' counsel engaged in improper closing statements by questioning the application of the statute of repose, which barred some of plaintiffs' claims. The court determines the law to be applied in a case and informs the jurors through instructions. *See State v. Willis*, 218 N.W.2d 921, 924 (Iowa 1974). "It is the duty of the jury to follow the instructions of the court." *Hall v. City of West Des Moines*, 62 N.W.2d 734, 738 (Iowa 1954). Jury nullification, or permitting the jury to determine the law and the facts, is not permitted under Iowa law. *State v. Hamann*, 285 N.W.2d 180, 184 (Iowa 1979).

6. Weil-McLain claims counsel for plaintiffs improperly referenced an OSHA citation the company received in 1974. Prior to trial, the district court determined the OSHA citation was not relevant on the issue of causation, but was relevant to the punitive damages claim and plaintiffs' expert could discuss it as "reliance" material. The court, therefore, denied Weil-McLain's motion in limine to bar evidence of the OSHA citation but ruled evidence of the citation would be tightly circumscribed. During the course of the trial, however, the court determined Weil-McLain had opened the door to fuller use of the OSHA citation.

On appeal, Weil-McLain's complains about references to the OSHA citation during closing arguments based on the court's pre-trial ruling limiting the

use of the evidence. Based on the court's later ruling Weil-McLain had opened the door to use of the evidence, we conclude counsel for plaintiffs did not violate the court's rulings by discussing the OSHA citation during closing arguments. *See State v. Parker*, 747 N.W.2d 196, 206 (Iowa 2008) (noting a party may open the door to otherwise inadmissible evidence by introducing evidence on the subject).

**B.**     *Timeliness of Motions for Mistrial*

After closing rebuttal arguments by plaintiffs' counsel on April 24, 2014, the court noted it was 4:30 p.m. and stated proceedings would resume in the morning at 9:00 a.m. When court resumed at 9:02 a.m. on April 25, 2014, Weil-McLain made an oral motion for a mistrial based on improper arguments by plaintiffs' counsel during closing arguments. Weil-McLain raised several claims, including that plaintiffs' counsel (1) improperly argued the award of pain and suffering should reflect Weil-McLain did not evaluate things enough, (2) stated the jurors should send Weil-McLain a message, (3) argued corporations should not spend millions of dollars to defend litigation, (4) improperly talked about the money made by Weil-McLain's expert witnesses, and (5) raised arguments seeking damages based on sympathy, rather than the facts of the case. The district court ruled, "aside from the brake line issue, I was not given the opportunity to pass on these things during closing argument by way of a timely objection, so I'm overruling the Defendant's motion for mistrial on each and every respect."

"When an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection."

*Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970). "[I]t is not timely to await the result of the trial and then first complain by allegation in motion for new trial in the event of an adverse verdict." *Id.* A motion for mistrial based on remarks of counsel during closing argument is timely if it is made before the case is submitted to the jury. *Id.* at 402. An objection to opposing counsel's statements may be made for the first time in a motion for mistrial. *Id.*

We conclude Weil-McLain's motion for mistrial was timely. The motion was made as soon as court resumed after the end of closing arguments and before the case was submitted to the jury. We determine the district court should have considered the motion on the merits, rather than finding it was untimely because Weil-McLain did not raise objections during the arguments. *See State v. Romeo*, 542 N.W.2d 543, 552 n.5 (Iowa 1996) ("It is not always essential that opposing counsel interrupt closing argument with an objection.").

After closing arguments on punitive damages, Weil-McLain against asked for a mistrial, stating counsel for plaintiffs argued Weil-McLain had been engaged in litigation for thirty years and improperly raised the issue of how much Weil-McLain was spending defending this litigation and other cases. The district court denied the renewed motion for mistrial. This motion was also timely.

**C.** *Discussion*

The district court addressed Weil-McLain's arguments concerning the closing arguments in ruling on the post-trial motions. The court concluded, "On this voluminous record, I cannot conclude that counsel's remarks affected the outcome of the case." The court determined, "The instant case, however, is not

one where I can conclude a manifest injustice or, if you will, a substantial injustice, has occurred."

"Counsel is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial." *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975). An attorney "may draw conclusions and argue all permissible inferences which may reasonably flow from the record which do not misstate the facts." *Id.* Alternatively, an attorney has no right to create evidence nor to interject personal beliefs. *Id.* "It is for the jury to determine the logic and weight of the conclusions drawn." *Id.*

"When determining liability it is improper for the jury to consider the relative wealth of the parties." *Rosenberger Enters., Inc. v. Ins. Serv. Corp.*, 541 N.W.2d 904, 907 (Iowa Ct. App. 1995). The Iowa Supreme Court has determined the discussion of the parties' earning power or "any *comparison* of respective earning powers or financial or economic conditions is entirely improper" to the process of determining damages in a tort action. *Burke v. Reiter,* 42 N.W.2d 907, 912 (Iowa 1950). A discussion during closing argument of the relative wealth of the parties may improperly influence jurors and in turn result in the necessity of a new trial. *Id.*; *Rosenberger Enters.*, 541 N.W.2d at 907.

While any one improper statement might not constitute prejudicial error, the cumulative effect of several improper statements may give rise to a claim of prejudice. *Andrews*, 178 N.W.2d at 402. Counsel's closing arguments should be viewed in their entirety to determine whether they caused prejudice. *Rosenberger Enters.*, 541 N.W.2d at 909 ("When viewed in its entirety, we

conclude the cumulative effect of Rosenberger's counsel's closing argument was an impassioned and inflammatory speech that likely caused severe prejudice to the defendant.").

In addition, "[w]hether the incident was isolated or one of many is also relevant; prejudice results more readily from persistent efforts to place prejudicial evidence before the jury." *State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999). In this regard, we consider whether statements during closing arguments were a "slip of the tongue," or whether an attorney should have been aware the statements were improper. *See Andrews*, 178 N.W.2d at 402 ("Attorneys engaged in the trial of cases to a jury know or ought to know the purposes of arguments to juries.").

In reviewing the closing arguments by plaintiffs' counsel in this case, we determine the district court abused its discretion in denying Weil-McLain's motion for mistrial. Plaintiff's counsel persistently made statements referring to matters that were barred by the court's ruling on the motion in limine. In particular, counsel referred several times to the amount of money Weil-McLain was spending in defending the case and this in turn highlighted the corporate wealth of Weil-McLain and compared it to the circumstances of plaintiffs. Counsel for plaintiffs also improperly told the jury to send Weil-McLain a message and told them Weil-McLain had been engaged in litigation for thirty years, also contrary to the pre-trial rulings. This continuous disregard for the court's rulings could not have been "a slip of the tongue" and was not an isolated incident. In considering the closing arguments in their entirety, we conclude it appears quite probable a

different result would have been reached but for the misconduct of plaintiffs' counsel, and therefore, Weil-McLain was prejudiced.

We do not reverse this case without pause and great consideration. We are keenly aware of the pressures on the trial court to bring cases, such as this, to a conclusion after many days of trial and dozens of witnesses coupled with the demands that continue to be placed on the dockets of trial judges. However, we cannot allow the continued violation of a judge's ruling to be so trampled upon that the power and leadership of the trial is taken away. Rulings on motions in limine, like all rulings, are binding upon the parties and should be readily enforced by the courts.

Based on the multitude of improper statements during closing arguments, we determine the district court's decision must be reversed and the case remanded for a new trial.

### III.    Admissibility of Evidence

"Because we reverse and remand this case for retrial, we will review other evidentiary issues raised at trial that may arise on retrial." *State v. Nance*, 533 N.W.2d 557, 561 (Iowa 1995).

Weil-McLain claims the district court improperly permitted evidence of the OSHA citation and Kinseth's exposure to asbestos from removal of the boilers. The district court denied the company's arguments on these issues in its ruling on the motion in limine. We review a district court's ruling on the admissibility of evidence for the abuse of discretion. *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014). "The grounds for a ruling are unreasonable or untenable when they are based on an erroneous application of law." *Id.* (citatation omitted).

**A.**     Weil-McLain claims the district court should have granted its motion in limine to entirely exclude evidence of the OSHA citation.  It states the 1974 citation was for asbestos exposure at its plant in Indiana and did not have any relevance to Kinseth's exposure to asbestos from installing Weil-McLain boilers. The district court ruled the OSHA citation was not relevant to causation and was inadmissible on this issue.  The court found the OSHA citation was admissible, however, on the issue of punitive damages and plaintiffs' expert could discuss it as "reliance" material.  The court stated, "I think it's got limited relevance, so that's why I say I wanted to have it tightly—tightly constrained."

The OSHA citation was relevant to the issue of punitive damages because it showed Weil-McLain did not start putting warnings on its products until after it received the citation.  Weil-McLain states Kinseth stopped installing boilers in 1972 and moved to mainly supervisory work, so its actions in 1974 are not relevant on the issue of punitive damages.  The evidence shows Kinseth was present occasionally when boilers were installed after 1972, as part of his supervisory work, and so Weil-McLain's actions in 1974 were relevant.

Also, under Iowa Rules of Evidence 5.703 and 5.705, an expert may testify concerning otherwise inadmissible evidence the expert relied upon if (1) the information is of a type reasonably relied on by other experts in the field, and (2) the expert's reliance may be amply tested on cross-examination.  *Brunner v. Brown*, 480 N.W.2d 33, 35 (Iowa 1992).  Plaintiffs' expert, Dr. Carl Brodkin, testified one of his sources of information about the concentration of asbestos fibers in the air while cutting asbestos rope was the OSHA testing at the Weil-

McLain plant. We conclude the district court did not abuse its discretion in finding the OSHA citation had limited relevance.

During the course of the trial, the district court found Weil-McLain "kicked open the door" on the admissibility of the OSHA citation through the testimony of Paul Schuelke, a mechanical engineer and the Director of Technical Services at Weil-McLain, permitting plaintiffs to use the OSHA citation for other purposes. Whether this same scenario occurs on remand will depend on the testimony presented in the case, and therefore, further speculation on the admissibility of the OSHA citation is unnecessary at this time.

**B.** Weil-McLain claims the district court should have granted its objection to evidence Kinseth was exposed to asbestos while tearing out Weil-McLain boilers because the evidence was irrelevant to the issue of liability due to the operation of the statute of repose. The company also claimed the evidence was more prejudicial than probative.

Iowa's statute of repose, section 614.1(11), "closes the door after fifteen years on certain claims arising from improvements to real property." *Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994). The district court determined Kinseth's claims arising from tearing out old boilers were barred by the Iowa statute of repose because once a boiler was installed, "it became an improvement to real estate within the meaning of the Iowa statute of repose," and there was no evidence Kinseth tore out old boilers within fifteen years of filing the action.

The district court denied the objection, finding the evidence relating to the exposure to asbestos while tearing out old boilers was relevant to Kinseth's

overall exposure to asbestos. In order to limit the prejudicial nature of the evidence, the court gave the jury an instruction specifying how the evidence could be considered. The instruction provided:

> As I mentioned to you at the outset of the trial, it may be necessary for me, from time to time, to give you a limiting instruction. This is one of those times. As you may recall, a particular item of evidence may be received for one purpose, and not for any other purpose.
>
> Iowa has a statute called the statute of repose. Under that statute, any claims against a party based on an alleged defective condition of an improvement to real property are extinguished after 15 years of the making of that improvement. Based on this statute, therefore, claims for dismantling (tear outs) of equipment and piping which have become improvements to real estate and refurbishment of steam valves and pumps, which at one time were part of an improvement to real estate, are not compensable. Therefore, you may not consider evidence of exposures to this category of evidence, tear outs of the improvements and refurbishment of valves and pumps, as evidence of fault or liability of any party. You may, however, consider the exposures to asbestos from tear outs of improvements to real estate and from refurbishment of valves and pumps as you consider the total exposure, if any, Mr. Kinseth had to asbestos.
>
> The exposures noted above, however, must be distinguished from any exposures to asbestos-containing material Mr. Kinseth might have sustained before or during the process of installation of real improvements to property. Exposures to asbestos experienced by Mr. Kinseth before and during the installation process are not barred by the statute of repose and you may consider such exposures in determining the fault, if any, and the extent of causation, if any, attributable to a party or released party.

We find the district court did not abuse its discretion in determining the evidence was relevant. In arguing plaintiffs should not be permitted to show Kinseth was exposed to asbestos when tearing out old Weil-McLain boilers, Weil-McLain stated it intended to present evidence Kinseth had been exposed to asbestos when tearing out pipes and valves, which it claimed presented a greater risk of exposure to asbestos. In addition, based on the instruction to the

jury concerning the purposes for which the evidence could be considered, we determine the evidence was not more prejudicial than probative. "Unless the contrary is shown, a jury is presumed to follow the court's instructions." *Schwennen v. Abell*, 471 N.W.2d 880, 887 (Iowa 1991).

### IV.    Allocation of Fault

Another issue which may arise on remand is a determination of the companies to be included on the special verdict form for the allocation of fault. Under section 668.3, although Weil-McLain was the only defendant actively defending the case, the jury was permitted to assign fault to companies who had previously settled with Kinseth if there was substantial evidence supporting an inference the company's product contributed to Kinseth's injuries. The jury assigned fault as follows:

| | |
|---|---|
| Weil-McLain | 25% |
| Kenwanee | 10% |
| Peerless (boilers) | 7% |
| American Standard/Trane | 7% |
| Burnham | 7% |
| Crane | 7% |
| Cleaver Brooks | 7% |
| Hercules | 10% |
| JM (Johns-Manville) | 15% |
| GE | 2% |
| Yarway | 0% |
| Georgia-Pacific/Bestwall | 3% |
| Owens-Illinois | 0% |

**A.**    Weil-McLain claims the district court should have submitted the issue of fault as to Peerless pumps, Bell & Gossett pumps, and McDonnell & Miller valves.[8] Weil-McLain states there was substantial evidence in the record

---

[8] Plaintiffs claim Weil-McLain is barred by the doctrine of judicial estoppel from raising this issue on appeal because it stated during the punitive damages phase of the trial it

to show Kinseth was exposed to products containing asbestos manufactured by these three companies. Our review on this issue is for the correction of errors at law. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) ("[W]e review challenges to jury instructions for correction of errors at law." (citation omitted)).

For purposes of allocation of fault under chapter 668, a "party" includes a defendant who has been released pursuant to section 668.7. Iowa Code § 668.2. No fault may be allocated against a party, however, "unless the plaintiff has a viable claim against that party." *Spaur v. Owens-Corning Fiberglass Corp.*, 510 N.W.2d 854, 863 (Iowa 1994). A plaintiff must be able to prove he "inhaled asbestos fibers as a result of being exposed to an asbestos-containing product manufactured and/or sold by [a defendant]; the mere possibility that plaintiff may have been exposed to [a defendant's] product is not enough." *Id.* at 862; *see also Huber v. Watson*, 568 N.W.2d 787, 790-91 (Iowa 1997) (noting "[p]roof of proximate cause in asbestos litigation is often limited to circumstantial evidence").

The district court determined Kinseth did not have a viable claim in instances where the claim was barred by the statute of repose. The district court determined, "Weil-McLain failed to meet its burden of presenting substantial evidence that Kinseth had exposure to these products during

---

would pay plaintiffs' compensatory damages. We determine the doctrine of judicial estoppel is not applicable because this case does not involve successive proceedings. *See Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 166 (Iowa 2003) ("The doctrine 'prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding.'" (citation omitted)).

installation and that any exposure was a substantial factor in causing his mesothelioma." The statute of repose applies to "an improvement to real property," and "[t]he key [is] the actual attachment of the product." *Tallman v. W.R. Grace & Co.*, 558 N.W.2d 208, 209 (Iowa 1997) (citing Iowa Code § 614.1(11)).

In his deposition, Kinseth testified he installed McDonnell & Miller valves, which he stated contained asbestos packing around the stem and asbestos gaskets in the body. Some of the valves did not come with pre-cut gaskets, and Kinseth would cut an asbestos gasket to fit the valve. When cutting a new gasket, asbestos dust was created. Additionally, Kinseth testified he installed Bell & Gossett pumps, but there was no evidence of asbestos exposure from the pumps. There was no evidence of installation of Peerless pumps. Furthermore, there was evidence Kinseth refurbished McDonnell & Miller valves, Bell & Gossett pumps, and Peerless pumps.

Kinseth's testimony showed he installed valves manufactured by McDonnell & Miller and pumps manufactured by Bell & Gossett. For the Bell & Gossett pumps, however, there was no evidence of asbestos exposure during installation. We determine the district court should have included McDonnell & Miller in the list of companies on the special verdict form. We affirm the court's decision not to include Bell & Gossett and Peerless pumps because the only evidence to support asbestos exposure from these products is due to refurbishing, and there can be no recovery under the statute of repose, as the products were permanent additions to real property. *See Buttz v. Owens-Corning Fiberglas Corp.*, 557 N.W.2d 90, 91 (Iowa 1996).

Therefore, we reverse the district court's decision not to include McDonnell & Miller valves on the special verdict form, but affirm as to Bell & Gossett and Peerless pumps.

**B.** In its cross-appeal, Kinseth claims the district court erred by allowing the jury to apportion fault to bankrupt entities Hercules and Johns-Manville. Under the jury's verdict, plaintiffs state they should be able to receive $400,000 from Hercules and $600,000 from Johns-Manville,[9] but through the bankruptcy trust system they will only be able to collect a small percentage of these amounts. Kinseth believes if Hercules and Johns-Manville had not been included on the special verdict form the jury may have allocated more fault to Weil-McLain.

A similar issue was addressed in *Spaur*, 510 N.W.2d at 862-63. At that time Johns-Manville was in bankruptcy proceedings and the court noted the "settlement plan was not final. No funds have been paid out or award calculated." *Spaur*, 510 N.W.2d at 863. The court stated plaintiffs needed to avail themselves of the procedure to settle with the bankruptcy trust to receive compensation and this had not occurred. *Id.* Also, under a bankruptcy court order, plaintiffs had "no possibility of obtaining an enforceable judgment against Mansville Trust." *Id.* Under these circumstances, the court determined the Mansville Trust was properly omitted from the special verdict form. *Id.*

The circumstances in the present case are very different. Kinseth has settled with Hercules and Johns-Manville and received funds from them.

---

[9] Because the award for medical expenses has been reduced, the amounts would now be an award of $363,123 from Hercules and $544,685 from Johns-Manville.

According to Kinseth's appellate brief, plaintiffs received $4690 from Hercules and $26,250 from Johns-Manville. Thus, plaintiffs have availed themselves of the procedure to settle with the bankruptcy trusts for Hercules and Johns-Manville. Also, this is not a situation where plaintiffs could not obtain an enforceable judgment against the bankrupt entities, as they have already received compensation from these companies. We determine the district court did not err by including Hercules and Johns-Manville on the special verdict form for the allocation of fault.

## V.    Punitive Damages

Weil-McLain claims the district court improperly submitted the issue of punitive damages to the jury.[10] It states plaintiffs did not present clear, convincing, and satisfactory evidence its conduct deviated from that of its industry peers. Weil-McLain claims its conduct was identical to the conduct of its peers. Our review on this issue is for the correction of errors at law. *See Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005).

Punitive damages may be awarded if a plaintiff shows "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a). Punitive damages are not compensatory in nature; their purpose is punishment

---

[10] Contrary to Kinseth's assertion, we determine this issue has been preserved for our review. It was raised in Weil-McLain's motion for directed verdict and the motion for judgment notwithstanding the verdict, and the district court ruled on the issue. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883 (Iowa 2014) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

and deterrence. *Spaur*, 510 N.W.2d at 865. "To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show no care by defendant with disregard for the consequences." *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 255 (Iowa 1993). Punitive damages are discretionary and are never awarded as a matter of right. *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 395 (Iowa 2010).

Within the context of section 668A.1, the phrase "willful and wanton" means, "[t]he actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Id.* at 396 (citation omitted).

"[M]ere knowledge sufficient to initiate a duty to warn does not meet the higher standard for punitive damages." *Lovick v. Wil-Rich*, 588 N.W.2d 688, 699 (Iowa 1999). In *Beeman*, a case involving asbestos pipe insulation, our supreme court found defendant Keene Corp. and other companies manufactured and distributed asbestos-containing products for many years. 496 N.W.2d at 255. Rather than assessing punitive damages "based on the general knowledge of the asbestos industry," the court concluded, "there must be clear, convincing, and satisfactory evidence that sets Keene's conduct apart from that of other asbestos manufacturers." *Id.* at 256.

Because we have determined the case must be reversed and remanded for a new trial, it is unknown whether punitive damages will be awarded in the second trial. For this reason, we make no ruling as to whether punitive

damages were appropriate under the law based on the evidence presented at the first trial.

## VI. Conclusion

Weil-McLain Company appeals the jury's award of damages and punitive damages to plaintiffs on theories of negligence, product liability, and breach of implied warranty of merchantability arising from the death of Larry Kinseth due to exposure to asbestos, and plaintiffs cross-appeal. We find the district court abused its discretion in denying Weil-McLain's motions for mistrial due to statements of plaintiffs' counsel during closing arguments. We affirm the district court's rulings on the admissibility of evidence. We conclude the district court erred by not including McDonnell & Miller valves on the special verdict form, but otherwise affirm the court's determination of which entities should be included in the special verdict form for the allocation of fault. Due to our decision reversing and remanded for a new trial, we make no ruling on the award of punitive damages. We reverse and remand for new trial on the appeal and affirm on the cross-appeal.

**REVERSED AND REMANDED FOR NEW TRIAL ON THE APPEAL, AFFIRMED ON THE CROSS-APPEAL.**